In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2506

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDREW F. MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cr-30136-WDS-1—**William D. Stiehl**, *Judge.*

ARGUED FEBRUARY 16, 2012—DECIDED JULY 27, 2012

Before POSNER, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Andrew Miller was charged with one count of distributing, one count of receiving, and three counts of possessing child pornography. At trial, Miller testified that he had no interest in viewing child pornography, and he did not "seek out images of naked children." Finding that Miller's testimony opened the door to evidence of his intent, knowledge, and lack of mistake, the district court allowed the government to

question him about allegations of sexual misconduct made by his six-year-old granddaughter and his teenage stepdaughter. The court prohibited the government from proving up these allegations with extrinsic evidence, however, and it instructed the jury at the close of the evidence that the evidence was relevant only to "the questions of [Miller's] intent, knowledge, and lack of mistake." The jury convicted Miller on all counts.

Miller appeals his conviction, arguing that the district court erred by allowing the government to question him about his granddaughter's and stepdaughter's allegations without conducting the requisite Rule 403 balancing test. He insists that the error prejudiced him because the government's case would have been significantly less persuasive had the evidence been excluded. While we agree that it was error for the district court to admit the evidence without first weighing its probative value against the risk of unfair prejudice, we find the error harmless because the evidence of Miller's guilt was overwhelming. We therefore affirm.

## I. BACKGROUND

On January 21, 2009, an investigator in the Illinois Attorney General's Office downloaded approximately fourteen child pornography videos from an internet protocol address registered to Andrew Miller in Chester, Illinois. The investigator, together with agents from Immigration and Customs Enforcement, later executed a search warrant on Miller's home. When they arrived, the agents explained that they were investigating child

pornography. Miller immediately responded, "Yeah, you might find some of that." The agents' search yielded a Hewlett Packard Pavilion desktop containing twenty child pornography video files and five child pornography images, a Gateway laptop with sixty-eight child pornography images in the Windows Media Player cache,[1] and an unconnected, loose Seagate hard drive that had two child pornography videos and twelve child pornography images in its memory. In total, the agents discovered more than one hundred digital files portraying children in a sexual manner or showing them involved in a sexual act.

During the search, the agents spoke with and took a statement from Miller's wife, Bonnie. She reported that she had once confronted Miller about the presence of child pornography on his computer and as a result Miller deleted some of the files. She also informed the agents that Miller's six-year-old granddaughter had previously alleged that Miller had watched her get undressed and inappropriately touched her. She also recounted allegations made by Miller's teenage stepdaughter, who claimed that Miller would "regularly" walk in on her while she showered. Bonnie explained that Miller was prohibited from bathing his grandchildren because of his granddaughter's and stepdaughter's allegations. She

---

[1] Cache is a "small high-speed memory in some computers into which are placed the most frequently accessed contents of the slower main memory or secondary storage." Oxford English Dictionary 753 (John Simpson & Edmund Weiner eds., 2d ed. 1989).

also stated that Miller's stepdaughter moved out of the home after Miller took the bathroom door off its hinges to maintain unfettered access to her in the shower.

After the search concluded, Miller went to the police station and gave a voluntary statement. He admitted that he had downloaded child pornography "out of curiosity." He also explained that although the agents would likely find approximately twenty child pornography files in his computer's shared folder, which was accessible to others via the internet, he had previously deleted about "one hundred" such files because Bonnie had confronted him about his child pornography collection.

Miller was first indicted for possession and distribution of child pornography on September 23, 2009. The grand jury returned a superseding indictment on December 15, 2010, charging Miller with one count of distributing, one count of receiving, and three counts of possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(1), (b)(1) (distribution); 2252(a)(2) (receipt); and 2252(a)(4) (possession), respectively. Miller moved in limine to exclude the evidence the government obtained from his wife regarding the allegations made by his granddaughter and stepdaughter because he thought those accusations were unfairly prejudicial under Rule 403. The district court denied Miller's motion as moot after the government agreed that it would not reveal the evidence unless Miller "opened the door."

At trial, Miller testified in his own defense. On direct examination, he explained that he used a peer-to-peer internet program called Limewire to download child

pornography, but thought he was obtaining adult pornography. He claimed that he used search terms like "teen" and "15 year" because adult pornography files typically had long titles, were mistitled, or had similar titles to videos containing child pornography. He claimed, and the government did not dispute, that the only way to determine the content of each file was to open the file and view its contents. Finally, Miller testified that he did not use Limewire to "look[] for" child pornography, that when he used terms like "teen" and "15 year" he was not "intending" to obtain child pornography, and that in his experience files containing child pornography were often "mixed up" in search results with those depicting adult pornography.

Before beginning its cross examination of Miller, the government requested a sidebar. It sought permission to inquire about the allegations made by Miller's six-year-old granddaughter and his teenage stepdaughter. The government argued that Miller "opened the door" to this line of questioning by testifying that "he is only interested in adult . . . sexually explicit images, not children." Miller's counsel responded that he thought there was a "mild difference" between having items of child pornography and "allegations that he walked in on a grandchild or a child." The district court agreed that Miller opened the door to questions about "whether he had ever deliberately looked at any live children," but warned the government that it would be stuck with Miller's answer to any question on the subject.

The government began its cross examination by asking Miller if he had used the internet to "seek out

images of naked children." Miller responded that he had not. At a second sidebar, the government again requested permission to question Miller about his granddaughter's and stepdaughter's allegations. Miller's counsel objected. He asserted that Miller's denial did not open "the door to viewing his own children in person live." The district court disagreed, ruling that the government had "enough to go ahead."

So the government asked about the allegations made by Miller's six-year-old granddaughter and teenage stepdaughter:

Q. Isn't it true that that six-year old has alleged that you used to watch her get dressed and that you touched her inappropriately?

A. I never heard this.

Q. You've never heard this?

A. Never had charges brought up on it for anything like that.

Q. Well, you weren't charged, but she did allege it. You've never heard that before?

A. No.

* * *

Q. Did agents ask you about these issues with looking at your granddaughter naked and touching her?

A. I've given my grandchildren baths before, but I quit that at two years old.

Q. That wasn't my question, sir. Did the agents ask you about this?

A. No, the agents didn't ask me about that.

* * *

Q. Okay. Well, sir, aren't you in fact lying?

A. I have never touched my grandchildren inappropriately.

Q. That wasn't the question, sir. Wasn't that asked in your interview?

A. I don't recall that.

Q. Okay. Are you allowed to bath[e] your grandchildren?

A. Yes.

Q. So in other words, were you asked during your interview whether or not you do bathe your grandchildren?

A. Yes, I was.

Q. And what did you say?

A. I said I don't do it. I quit doing it when they reached the age of two.

Q. And in fact isn't that because your wife won't let you?

A. No.

Q. Isn't that because . . . your children, the parents of the grandchildren, won't let you?

A. No.

* * *

Q. Did you used to walk in on [your stepdaughter] regularly in the shower?

A. No.

Q. Did she in fact move out of the house because you walked in on her so regularly in the shower when she was a teenager?

A. No.

Q. And in fact, didn't she, before she moved out of the house, she would try to lock the doors but you took them off the hinges, sir, because you wanted to look at her naked?

A. No, I took the hinges off the doors because they were smoking in their room.

Q. Oh, but you admit you took the hinges off the door?

A. Yes, I did.

* * * *

The entire exchange lasted a few minutes. The government accepted Miller's answers and did not introduce any extrinsic evidence to contradict his denials.

Also during his cross examination, Miller admitted that he installed Limewire on his computer. He agreed that he increased his computer's bandwidth and optimized Limewire to share his files with more people via the internet. And he did not dispute that he input terms like "teen" and "15 year" into Limewire's search feature to

find pornography and he actually "viewed" child pornography a "couple times," including videos of children as young as ten years old engaged in sexual acts. The jury convicted Miller on all five counts. The court sentenced him to 262 months in prison, with a lifetime term of supervised release, and ordered him to pay a $500 special assessment. Miller appeals.

## II. ANALYSIS

Miller contends that the district court erred by allowing the government to question him about his granddaughter's and stepdaughter's allegations and by not weighing the risk of unfair prejudice against the probative value of that evidence. He maintains that the error was prejudicial because the government's case would have been significantly less persuasive had the evidence been excluded. His appeal raises two issues: whether the district court erred, and if so whether the error was prejudicial.

### A. The District Court Erred by Not Conducting the Rule 403 Balancing Test

Federal Rule of Evidence 403 authorizes a district court to exclude "relevant evidence" if the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value

of the offered evidence." *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011). Before admitting evidence, a district court should "weigh the need for and probative value of the evidence against potential harm that its admission might cause." *Mihailovich v. Laatsch*, 359 F.3d 892, 906 (7th Cir. 2004). Although we ordinarily review a district court's evidentiary rulings for an abuse of discretion, we give "special deference" to the court's findings under Rule 403 and will reverse only when "no reasonable person could take the view adopted by the trial court." *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008).

It is undisputed that the district court failed to explicitly conduct the Rule 403 balancing test before allowing the government to ask Miller whether he had been accused of touching his granddaughter inappropriately, watching her get undressed, or regularly viewing his stepdaughter while she showered. The allegations made by Miller's granddaughter and stepdaughter evidenced Miller's character. Such evidence is generally not admissible to show the defendant's propensity to commit the charged crime. Fed. R. Evid. 404(b)(1); *see also United States v. Perkins*, 548 F.3d 510, 513 (7th Cir. 2008). But Rule 404(b)(2) and Rule 414(a) provide two exceptions to the general rule of inadmissibility.

Under Rule 404(b)(2), evidence of a crime, wrong, or other act "may be admissible" to prove "intent . . ., absence of mistake, or lack of mistake." Fed. R. Evid. 404(b)(2); *see also United States v. Knope*, 655 F.3d 647, 656 (7th Cir. 2011). Rule 414(a) makes "evidence of the defendant's commission of another offense . . . of child molestation"

admissible "in a criminal case in which the defendant is accused of an offense of child molestation," and it defines "offense of child molestation" broadly to include the distribution, advertising, or possession of child pornography. Fed. R. Evid. 414(d); *see also Loughry*, 660 F.3d at 970. Thus, both Rule 404(b)(2) and Rule 414(a) provide avenues for evidence of a defendant's prior bad acts to be admitted against him during a criminal trial. But a court must scrutinize Rule 404(b)(2) and Rule 414(a) evidence to assess the risk of unfair prejudice, nonetheless. *See, e.g., United States v. Ciesiolka*, 614 F.3d 347, 355 (7th Cir. 2010) (examining Rule 404(b)(2) evidence under Rule 403 balancing test); *United States v. Hawpetoss*, 478 F.3d 820, 823-24 (7th Cir. 2007) (examining Rule 414(a) evidence under Rule 403 balancing test). This is so because "[e]ven if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis*." United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009).

We have consistently held that a district court commits error by not clearly articulating its Rule 403 rationale before admitting adverse character evidence against a defendant. *See, e.g., Ciesiolka*, 614 F.3d at 357 ("[T]he district court abused its discretion in failing to propound its reason for the conclusion that the probative value of the [disputed evidence] was not substantially outweighed by the risk of unfair prejudice."). Indeed, even a "pro-forma" recitation of the Rule 403 balancing test is not sufficient because it "does not allow an appellate court to conduct a proper review of the district court's

analysis." *Loughry*, 660 F.3d at 972. To avoid this trap, a district court should "carefully analyze the prejudicial effect," *id.* at 971, and provide a "considered explanation" of its reasons for admitting the evidence. *Ciesiolka*, 614 F.3d at 357. A "perfunctory" analysis or "bare-bones" conclusion simply will not suffice. *Id.*

Here, there was no analysis. Miller moved in limine before the trial to exclude the contested evidence under Rule 403, but the district court denied the motion as moot after the government agreed not to broach the subject unless Miller "opened the door." At trial, defense counsel's stated objection was that Miller did not open the door to the evidence. Counsel should have expressly requested then that the district court weigh the evidence's probative value against the risk of unfair prejudice. But both the government and the district court were on notice that the basis for Miller's objection to the evidence was that it was unfairly prejudicial. Although Miller did not renew his in limine Rule 403 objection to the evidence during the trial, we think the basis for his objection was clear: he sought to keep the evidence out because he thought its probative value was substantially outweighed by the risk it presented of unfair prejudice. When evidence of this sort is offered to prove the defendant's intent, knowledge, or lack of mistake, as it was here, Rule 403 balancing is necessary because the evidence may still risk a decision on an improper basis such as passion or bias. *Rogers*, 587 F.3d at 822. The district court should have followed a two-step process before allowing the government to question Miller about his granddaughter's and stepdaughter's allegations: first,

the court should have determined whether the evidence fell within the scope of Rule 404(b)(2) or 414(a); then, it should have carefully analyzed whether to exclude the evidence under Rule 403 and articulated on the record the basis of its decision. *See id.* at 821 ("We have explicitly said, and both parties agree, that after a Rule 413 analysis the court must next consider whether it should exclude the evidence under Rule 403."). The district court in this case complied with the first step of this process, but it failed to expressly do so with regard to the second. This was error.

### B. The Error Was Harmless

The government argues that even if the district court erred by not conducting the Rule 403 analysis, it was harmless.[2] It is true that a district court's failure to con-

---

[2] Miller never renewed his motion to exclude the evidence, despite the district court's denial of the motion as moot because the government agreed not to introduce the evidence *unless* Miller opened the door. Surely, Miller should have known that the government might later seek admission of the evidence. He should have restated his Rule 403 objection to the evidence. While the government contends that Miller's failure to renew his motion constitutes a forfeiture, which would make our review for plain error, *United States v. Tanner*, 628 F.3d 890, 904 (7th Cir. 2010), we need not decide the issue because we find that the district court's error was harmless. *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011) ("The third prong of the plain error

(continued...)

sider the prejudicial nature of propensity evidence before admitting it, or its "perfunctory" consideration of this critical question, "may in itself be grounds for reversal*." Ciesiolka*, 614 F.3d at 357. Miller, citing our decision in *Ciesiolka*, urges that result here. But this case is unlike *Ciesiolka*, where the district court admitted "mountains of Rule 404(b) evidence" without explaining its rationale. *See id.* at 358. The evidence that the district court admitted here was not so "voluminous" as to create "a significant risk of prejudice," *id.*, so we will review the district court's admission of the evidence for harmless error. *See, e.g., Knope*, 655 F.3d at 659-60 (conducting harmless error analysis of the district court's decision to admit evidence of other bad acts without conducting the Rule 403 balancing test); *United States v. Allen*, 605 F.3d 461, 467 (7th Cir. 2010) (same).

"The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *Loughry*, 660 F.3d at 975 (citations and internal quotation marks omitted). "An error is harmless if the untainted incriminating evidence is overwhelming." *Id.* (citations and internal quotation marks omitted).

Three factors militate against finding prejudice in the instant case. First, and most importantly, even excluding

---

[2] (...continued)

test—whether the error affected the defendant's substantial rights—calls for essentially the same inquiry as a harmless error analysis.").

the allegations made by Miller's granddaughter and stepdaughter, the evidence of Miller's guilt was over-whelming. The government introduced Miller's own admissions that he had knowingly downloaded some child pornography, viewed the videos and images, and increased his bandwidth for enhanced sharing capa-bilities. The government played for the jury audio record-ings of Miller's interview with agents, during which he admitted using search terms like "teen" and "15 year" to find pornography, viewing and retaining at least ten files containing child pornography with victims as young as ten years old, and intentionally seeking and obtaining files containing child pornography "out of curiosity." Miller's desktop, laptop, and loose hard drive together contained more than one hundred videos and images of child pornography. And Miller admitted during his interview with police that his computer had approxi-mately twenty child pornography videos on the hard drive and that he had deleted "one hundred" similar files, some of which he knew contained child pornography because he viewed the files before deleting them.

Second, contrary to Miller's fervent assertion, it is debatable whether the questions about Miller's inten-tional viewing of his granddaughter and stepdaughter naked posed a serious threat to excite the emotions of the jury to the point of "irrational behavior." *Cf. United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) ("[T]he more probative the evidence, the more the court will tolerate some risk of prejudice"). This evidence was probative of Miller's intent to view images of naked children and that his doing so was no mistake. *See*

*Hawpetoss*, 478 F.3d at 824 ("In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant . . . that simply does not exist in ordinary people."); *Knope*, 655 F.3d at 657 (explaining that defendant's past chats expressing interest in having sex with minors "undermined [his] defense that his chats with Maria were harmless fantasy and that he believed that she was over eighteen years old."). The most inflammatory evidence, which posed the greatest risk of unfair prejudice, was the assertion that he had touched his six-year-old granddaughter inappropriately and had been prohibited from bathing his grandchildren. But the government made only brief reference to these allegations, which Miller denied, and did not attempt to prove up the matter with extrinsic evidence. *Compare Ciesiolka*, 614 F.3d at 358 (describing the "jury's day-long exposure to voluminous evidence" of the defendant's other bad acts), *with United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011) (finding "the evidence was much less voluminous and took up a much smaller portion of the trial than in *Ciesiolka*.").

Finally, the district court instructed the jury at the close of evidence that the evidence was admitted for a limited purpose. The instruction stated, "You have heard evidence of acts of the Defendant other than those charged in the indictment. You may consider this evidence only on the questions of intent, knowledge, and lack of mistake. You should consider this evidence only for this limited purpose." While the limiting instruction is not dispositive, it does help temper the prejudicial effect of an evidentiary error. *See United States v. Jones*,

455 F.3d 800, 809 (7th Cir. 2006) (explaining that instructions are "effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence"). We presume, as we must, that the jury followed the court's instructions, *United States v. Zahursky*, 580 F.3d 515, 525-26 (7th Cir. 2009), and Miller has not identified anything in the record to suggest otherwise. *See Chambers*, 642 F.3d at 596 (assuming that the instruction removed any prejudice because the defendant did not attempt "to show that the jury could not follow the court's limiting instruction.").

Miller points to *Loughry* as support for his claim of prejudice. But *Loughry* is of no help to him. In that case, we held that the district court committed reversible error by permitting the government, over the defendant's objection, to show several uncharged videos depicting "hard core" pornography which were found in the defendant's home. *Loughry*, 660 F.3d at 967. Several facts make that case distinguishable. First, the videos shown to the jury were of minimal probative value because, among other things, Loughry was not charged with possession of child pornography. *Id.* at 973. Additionally, the government indicted Loughry for advertising, distributing, and conspiring to advertise and distribute child pornography via an online depository, which "had rules specifically banning 'hard core' pornography." As we explained, "the risk of unfair prejudice to Loughry from the admission of the 'hard core' pornography was substantial . . . [because the] video excerpts shown to the jury . . . displayed men raping and ejaculating in the genitals of prepubescent girls, as well as young girls engaging in

sexual acts with each other." *Id.* at 974. Finally, the evidence of Loughry's guilt "was far from 'overwhelming.'" *Id.* at 975. In fact, "the government could not identify a single image of child pornography actually posted by Loughry." *Id.* That is certainly not the case here because, as described in detail above, the government presented overwhelming evidence establishing that Miller knowingly possessed, received, and distributed child pornography.

Because the unchallenged evidence introduced by the government clearly established Miller's guilt beyond a reasonable doubt on all counts, the government's reference to the allegations—particularly that which was most inflammatory—was fleeting, and the district court gave an instruction limiting the jury's consideration of the evidence, we hold that the district court's error in allowing the government to question Miller about his granddaughter's and stepdaughter's allegations without conducting a Rule 403 analysis was harmless. *See, e.g.*, *United States v. Carraway*, 108 F.3d 745, 756 (7th Cir. 1997).

## III. CONCLUSION

For the above-stated reasons, the defendant's conviction is AFFIRMED.