In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-1964, 12-1965 & 12-1966

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE JULIAN TOVAR-PINA,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 11 CR 40103, 11 CR 40017,
11 CR 40046—**James E. Shadid,** *Chief Judge.*

ARGUED APRIL 8, 2013—DECIDED APRIL 29, 2013

Before EASTERBROOK, *Chief Judge*, and BAUER and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Jose Tovar-Pina[1] has made a habit of coming to the United States illegally and com-

---

[1] Jose Tovar-Pina's name is spelled "Tovar-Pena" in some documents, and he has also used numerous other names, including Julian Tovar-Pina, Oscar Orellana-Ayala, and Fausto Lopez-Mora. We refer to the defendant-appellant as "Tovar-Pina."

mitting crimes. After his third deportation in 2008 and subsequent unlawful return to the United States, Tovar-Pina was arrested in November 2010 for using aliases to cash stolen checks. He was later indicted in two separate jurisdictions—one indictment related to his unlawful return to the United States and the other involved the stolen checks—and a petition was filed to revoke the supervised release that accompanied his 2008 deportation. The three cases were consolidated, and Tovar-Pina pleaded guilty to various charges from the two indictments and admitted that he violated the conditions of his supervised release.

At the consolidated sentencing hearing, the district court sentenced Tovar-Pina to a total of 84 months' imprisonment, followed by 36 months of supervised release. The district court based its sentence on two separate Presentence Investigation Reports (PSR) prepared for the unlawful reentry offense and the bank fraud offenses. Neither party objected to the PSRs at the time. The government and Tovar-Pina now both agree, however, that (1) the prison sentence imposed for the unlawful reentry offense and the bank fraud offenses was based on an improper U.S. Sentencing Guidelines range, and (2) this error affected Tovar-Pina's substantial rights. We agree with the parties and vacate the sentences at issue in Case Nos. 12-1964 and 12-1965 and remand for resentencing.

## I. BACKGROUND

Tovar-Pina is a Mexican native who first entered the United States illegally sometime before June 1988.

Between that time and his first deportation in 1992, Tovar-Pina was convicted of receiving stolen property, stealing an automobile, attempting to pass a fraudulent check, selling cocaine, and committing two forgeries involving bank victims. By October 1994, he was back in the United States. Upon his return, Tovar-Pina and four other men burglarized roofing and construction companies in Nebraska, took payroll checks, forged them, and attempted to cash them. Tovar-Pina was convicted of these crimes, as well as for unlawful reentry, and deported to Mexico for the second time in 1999.

By June 2005, Tovar-Pina had returned to the United States. It was then that Tovar-Pina was again arrested and convicted of charges related to a similar scheme of burglarizing landscaping and construction companies, stealing payroll checks, and fraudulently cashing the checks at banks. A district court in the Western District of Virginia sentenced Tovar-Pina to concurrent 4-year prison terms, followed by 3 years of supervised release, for the charges—bank fraud conspiracy and unlawful reentry. Tovar-Pina was deported to Mexico for the third time in August 2008.

Tovar-Pina made his way back into the United States sometime before November 2010. That month, Tovar-Pina and a partner stole blank checks from a number of businesses around the Illinois-Iowa border. The two men forged over forty checks, payable to seventeen different names, and presented them to various branches of five banks. Three of the banks cashed the checks and suffered a total loss of over $42,000; two banks suspected fraud and refused to cash them.

On November 24, 2010, Tovar-Pina and his partner's scheme was put to an end when they were arrested after fleeing one of the banks that suspected fraud. This conduct violated the conditions of Tovar-Pina's supervised release in the Western District of Virginia, and a petition to revoke his supervised release was issued (the supervised release violation).[2]

On January 12, 2011, a grand jury in the Southern District of Iowa charged Tovar-Pina with unlawful reentry after deportation (the unlawful reentry offense) in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). One month later, on February 15, a grand jury in the Central District of Illinois returned an eight-count indictment against Tovar-Pina and his partner for their criminal activity in November 2010. Tovar-Pina was named in five counts—bank fraud, in violation of 18 U.S.C. § 1344 (Count One); conspiracy to utter forged securities, in violation of 18 U.S.C. § 371 (Count Two); and uttering forged securities, in violation of 18 U.S.C. § 513(a) (Counts Three, Five, and Seven). These counts are collectively referred to as the "bank fraud offenses."

In May 2011, the Western District of Virginia transferred jurisdiction of Tovar-Pina's supervised release violation to the Central District of Illinois, which Chief Judge James E. Shadid accepted on May 18, 2011.

---

[2] The petition, filed on May 12, 2011, alleged two violations: (1) the underlying conduct of the unlawful reentry offense and the bank fraud offenses, and (2) Tovar-Pina's failure to pay restitution from his 2005 fraud conviction.

In October 2011, the parties consented, pursuant to Federal Rule of Criminal Procedure 20(a), to the transfer of the unlawful reentry offense from the Southern District of Iowa to the Central District of Illinois. At this point, all three cases—the unlawful reentry offense, the bank fraud offenses, and the supervised release violation—were all before Chief Judge Shadid.

On December 9, 2011, Tovar-Pina pleaded guilty to the unlawful reentry offense and to three of the five bank fraud counts, as well as admitted to violating the conditions of his supervised release. (The government later dismissed the other two bank fraud counts.) A sentencing hearing for all three cases was set for April 2012.

Prior to Tovar-Pina's sentencing hearing, the probation office prepared two PSRs, one for the unlawful reentry case and one for the bank fraud case. The PSR for the unlawful reentry offense had an offense level of 13 and a criminal history category of IV, which set the Guidelines range at 24 to 30 months' imprisonment. The PSR for the bank fraud offenses also had an offense level of 13 and a criminal history category of IV, which set the Guidelines range at 24 to 30 months.[3] Neither Tovar-Pina nor the government objected to the calculation of the PSRs. All parties involved failed to

---

[3] The PSR added 2 levels under U.S.S.G. § 2B1.1(b)(2)(A)(i) based on the conclusion that the criminal activity involved ten or more victims. Both parties now agree that the report did not identify ten or more victims.

recognize that a single offense level should have been calculated for both cases pursuant to U.S.S.G. ch. 3, pt. D, as we discuss below.

The probation office also prepared a violation memorandum for the supervised release violation. The advisory Guidelines range for the violation was 24 to 30 months' imprisonment because of the unlawful reentry and bank fraud offenses and Tovar-Pina's criminal history category IV. The memorandum also noted, however, that the statutory maximum sentence was 24 months, citing 18 U.S.C. § 3583(e)(3). Neither party objected to the violation memorandum.

The parties reconvened for Tovar-Pina's sentencing hearing on April 13, 2012. Without objection, the district court adopted the PSRs and their respective 24- to 30-month Guidelines ranges for the unlawful reentry offense and the bank fraud offenses. It also adopted the statutory maximum 24 months' imprisonment Guidelines range for the supervised release violation.[4] Both

---

[4] The government points out that this was also an error because one of the original counts in the supervised release violation case was unlawful reentry, in violation of 8 U.S.C. § 1326(a), which is a Class B felony. Pursuant to 18 U.S.C. § 3583(e)(3), the maximum statutory penalty for revocation of supervised release on a Class B felony count is 36 months' imprisonment. Tovar-Pina may have benefitted from this error, and he has asked us to dismiss with prejudice his challenge to the supervised release violation sentence
(continued...)

parties were then given an opportunity to address the court.

The government detailed Tovar-Pina's lengthy criminal history of entering the United States illegally and engaging in schemes involving theft and fraud. The government then asked the court to impose consecutive 30-month prison terms for the unlawful reentry offense and the bank fraud offenses, plus an additional 24-month sentence for the supervised release violation.[5] Conversely, Tovar-Pina's counsel asked the court to sentence Tovar-Pina to no more than concurrent 24- to 30-month prison terms for the unlawful reentry offense and the bank fraud offenses, plus an unspecified sentence for the supervised release violation. Tovar-Pina's counsel also asked the court to recommend to the Bureau of Prisons that Tovar-Pina be housed at the Federal Correctional Institution in Pekin, Illinois.

The district court announced Tovar-Pina's sentence by first discussing the difference between illegal aliens who come to the United States to "work legally, if they can, to provide for families and themselves and to other-

---

[4] (...continued)
in Case No. 12-1966. Accordingly, we grant the dismissal of Tovar-Pina's appeal in that case.

[5] The government originally requested a 30-month prison sentence for the supervised release violation but amended its position when notified by the judge that the statutory maximum was 24 months.

wise remain free from criminal conduct" and those who come to the United States "illegally but also to continue in an illegal purpose by conducting other criminal conduct." Tovar-Pina was deemed to be a member of the latter group. Then, after a few additional remarks, the district court imposed a sentence of 30 months' imprisonment for the bank fraud offenses,[6] to run consecutively to a 30-month prison term for the unlawful reentry offense and consecutively to a 24-month prison term for the supervised release violation, for a total of 84 months' imprisonment. The district court also ordered concurrent 3-year terms of supervised release on the unlawful reentry and bank fraud offenses, plus $42,865.01 in restitution and special assessments totaling $400. Tovar-Pina's request to be placed at the Pekin, Illinois Correctional Institution was declined.

## II. DISCUSSION

Tovar-Pina challenges his 84-month prison sentence, comprised of Case Nos. 12-1964 (unlawful reentry offense), 12-1965 (bank fraud offenses), and 12-1966 (supervised release violation). He contends the district court committed plain error when it failed to determine a single combined offense level for the unlawful reentry offense and the bank fraud offenses, which led to a sen-

---

[6] The district court sentenced Tovar-Pina to 30 months' imprisonment on *each* of the three bank fraud counts. The prison terms were to run concurrently, however, so the total prison sentence resulting from the bank fraud offenses was 30 months.

tence based on an improper Guidelines range. The government concurs, and so do we.

The Sentencing Guidelines instruct courts to determine a single offense level that encompasses all counts of conviction for a given defendant, including those "contained in the same indictment or information," or as relevant here, "contained in different indictments or information for which sentences are to be imposed at the same time or in a consolidated proceeding." U.S.S.G. ch. 3, pt. D, intro. comment. Two separate federal grand juries returned indictments against Tovar-Pina—one for the unlawful reentry offense and one for the bank fraud offenses—but the district court was imposing a sentence for both indictments at the same time and in a consolidating proceeding. So, the district court should have applied U.S.S.G. §§ 3D1.4-5 and determined a single offense level, which Tovar-Pina and the government agree should have been 15 with a criminal category IV, leading to a Guidelines range of 30 to 37 months' imprisonment on each count, with all counts running concurrently.

That did not occur; the district court was presented with a Guidelines range of 24 to 30 months' imprisonment for *each* of the two offense groups. Accordingly, when the district judge sentenced Tovar-Pina to two consecutive 30-month prison terms, the sentence remained within the Guidelines range the parties believed to be correct, but in reality, this was 23 months above the correct Guidelines range. The judge did not explain this upward departure, and we have no way of

knowing whether the judge would have imposed the same sentence but for the procedural error. We cannot, therefore, presume the error was harmless. *See United States v. Love*, 680 F.3d 994, 997-98 (7th Cir. 2012). We vacate Tovar-Pina's sentence for the unlawful reentry offense and the bank fraud offenses, and remand for resentencing using the correct Guidelines range.

The only issue left to decide is whether we should apply Circuit Rule 36 and remand this case to a different judge for resentencing. Tovar-Pina contends the original sentencing judge cannot be impartial because of two remarks made at his sentencing hearing:

(1) I believe that [Tovar-Pina] is the poster child for an extended sentence for illegal aliens. His conduct makes it difficult for all who come here seeking only the opportunity to legally work and provide for their families.

(2) This will be a first for me: With all due respect, I'm not going to make any recommendations as to your placement. You can be placed where the Bureau of Prisons wishes you to be placed.

But these statements do not produce the concerns we voiced in prior cases where we have remanded to a different judge for sentencing. The comments were not unreasonably inflammatory, provocative, or disparaging, c*f. United States v. Bradley*, 628 F.3d 394, 398, 401 (7th Cir. 2010) (remanding to a different judge where the sentencing judge told the defendant, among other things, "You are the crabgrass on the lawn of life."); *United States v. Figueroa*, 622 F.3d 739, 743-44 (7th Cir.

2010) (stating that the district judge's "litany of inflammatory remarks undermined anything else that court said during the [sentencing] hearing"); nor do they demonstrate the judge would be unable to follow our instructions on remand. *Cf. United States v. Thomas*, 956 F.2d 165, 167 (7th Cir. 1992) (using Rule 36 where the district judge "said he was in a foul mood because he didn't like to redo sentences, didn't like [this Court's] handing of the [defendant's] first appeal, and didn't like the [G]uidelines"). Given Tovar-Pina's repeated disregard for the law, the comments demonstrate, at most, the sentencing judge's consideration of the requisite sentencing factors and attempt to explain the rationale behind the sentence imposed. We decline to invoke Rule 36.

## III.  CONCLUSION

For the aforementioned reasons, we VACATE Tovar-Pina's sentence in Case Nos. 12-1964 and 12-1965, and REMAND for further proceedings consistent with this opinion. We dismiss with prejudice Tovar-Pina's appeal in Case No. 12-1966.