In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3411

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PARNELL GULLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08 CR 20057—**Michael P. McCuskey,** *Judge.*

ARGUED APRIL 8, 2013—DECIDED JUNE 17, 2013

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Government agents set up
a crack cocaine deal between a confidential inform-
ant (CI), Anthony Heard, and a known crack dealer,
Pierre Blake. On October 21, 2008, Heard drove to the
meeting place wired with a concealed video and audio
recording device. The recorder, for all intents and pur-
poses, captured Parnell Gulley—Blake's faithful driver—

getting into Heard's car and exchanging a bag of crack cocaine for $200. Gulley was indicted on one count of knowingly and intentionally distributing 5 or more grams of a mixture and substance containing crack cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B). The case proceeded to trial, which ended in a hung jury. At the re-trial, Gulley's counsel argued that Gulley did not "knowingly or intentionally" deliver a controlled substance in violation of the relevant statutes; the jury disagreed and found him guilty.

During the second trial, the government presented testimonial evidence that Gulley admitted to driving Blake to a drug deal with Heard that occurred two days after the charged offense. The government also presented Gulley's admission that he knew Blake was a crack dealer, that he frequently drove Blake around, and that he had previously made a "delivery" for Blake. This was in addition to evidence that crack cocaine, ecstasy, and a firearm were found at Blake's stash house on the day he and Blake were arrested. Gulley did not object to this testimony at trial, but he now contends the evidence should have been excluded under Federal Rule of Evidence 404(b).

At Gulley's sentencing hearing, the district judge sentenced Gulley to 327 months in prison, followed by an 8-year term of supervised release. In imposing his sentence, the district judge explained that our precedent prohibited retroactive application of the Fair Sentencing Act of 2010 (FSA); that precedent has since been overturned. Gulley argues that he should be resentenced in

accordance with the FSA while the government contends that any error regarding his prison term was harmless. The parties agree that we should vacate the supervised release term.

For the reasons that follow, we affirm Gulley's conviction but vacate his sentence and remand for resentencing.

## I. BACKGROUND

Heard began working as a CI for the Champaign, Illinois Police Department in 2008. The department originally arrested Heard in connection with an investigation into the sale of crack cocaine in the area, and Heard agreed to cooperate as a CI in exchange for leniency.

In October 2008, the Champaign Police Department began an investigation into the crack cocaine dealings of a man known to Heard as "K.D."—he was also known as "Church" and was later identified as Blake. On the morning of October 21, Heard placed several recorded calls to Blake's phone to arrange a controlled buy of crack cocaine. A time, place, and price were agreed upon. Two people were on the other end of the phone calls at various times: Blake and an unknown male voice, later identified as Gulley, Blake's driver and associate. DEA Special Agent Pablo Ramos and Officer Matthew Henson were present when Heard made the calls.

Later that day, Heard was wired with a hidden video and audio recording device to document the planned transaction. After being equipped with the

device, Heard drove to the Country Brook Apartments in Champaign, Illinois, where he parked his car, exited the vehicle, and casually waited in the parking lot. Special Agent Ramos and Officer Henson followed Heard's car to the meeting place but, once they got close, kept at bay because other law enforcement personnel—DEA Task Force Agent Jack Turner, Officer Jaceson Yandell, and another officer—were already in the immediate area conducting surveillance.

Gulley, who at the time was still unknown to Heard and the officers involved, walked out of the complex and spoke to Heard shortly after Heard arrived. The two men got into Heard's car and, according to Heard, Gulley placed a clear plastic baggy containing crack cocaine on the armrest. Heard then gave Gulley $200 in cash, the amount the parties had agreed on. The video recording does not show Gulley's face inside the car, the bag of drugs, or the money changing hands, but the audio recorder captured Gulley's voice as he counted the cash. The audio recorder also captured Heard asking Gulley about purchasing a "six-trey"—63 grams of crack cocaine or one-sixteenth of a kilogram—and whether Blake could come outside to talk. At that time, Gulley got out of the car and went inside the apartment complex. Blake walked outside about a minute later with cocaine residue on his hands and clothing, and he and Heard spoke about future crack cocaine transactions. Blake said he would charge $1,500 to $1,600 for a 63-gram deal.

Heard then left the apartment complex and drove to his agreed-upon meeting location with law enforcement

personnel. Once there, Heard gave Special Agent Ramos and Officer Henson the bag he received from Gulley, which contained 6.8 grams of crack cocaine.

Two days later, on October 23, Heard arranged to purchase 63 grams of crack cocaine from Blake, a significantly larger amount than the first buy. Officers parked a video-surveillance van near the residence where Blake stayed with his girlfriend in Champaign, which was a short distance away from the Country Brook Apartments. The surveillance captured Gulley and Blake leaving the residence, getting into a car, and driving to the Country Brook Apartments at approximately 2:35 p.m. Gulley was the driver; Blake sat in the front passenger seat. This information was relayed to other agents and officers involved in the investigation who were standing by at other posts. Heard, again equipped with a video-audio recording device, drove to the Country Brook Apartments at approximately the same time as Gulley and Blake.

At the apartment complex, Blake gave Heard a bag containing 60.7 grams of crack cocaine in exchange for $1,500. Heard then left the apartment complex and delivered the "goodies" to Special Agent Ramos and Officer Yandell. Surveillance captured Gulley and Blake returning to the residence Blake shared with his girlfriend at about that same time.

On October 31, officers secured and executed warrants to search, first, an apartment in the Country Brook Apartments complex—Blake's stash house—and, second, the residence Blake shared with his girlfriend. Crack cocaine,

ecstasy, and a firearm were found at the stash house; Gulley, Blake, Blake's girlfriend, another man, and $2,467 in cash were found at the residence. Officers later determined that $1,700 of the cash was money provided for the controlled buys. Gulley was arrested and taken to the police station.

Gulley waived his *Miranda* rights at the station and told Officer Yandell and Officer Henson that he was unemployed and on parole. He initially told the officers that he had no knowledge of or involvement in Blake's drug-dealing operation but admitted upon further questioning that Blake did not have a driver's license; that he drove Blake around to deliver cocaine, including driving Blake to Chicago to pick up 9 ounces of cocaine a few days before his arrest; that Blake kept cocaine at an apartment in the Country Brook Apartments; and that Blake sold cocaine in quantities of more than 3.5 grams. The interview was not recorded.

On November 18, 2008, Gulley was indicted on one count of knowingly and intentionally distributing 5 or more grams of a mixture and substance containing crack cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B), for his conduct on October 21, 2008. On January 6, 2009, Gulley agreed to cooperate with the government in exchange for a grant of direct use immunity. The agreement required him to provide "complete and truthful" information regarding his criminal conduct.

In accordance with the agreement, Gulley spoke, with his attorney present, to Task Force Agent Turner and

Officer Yandell on February 2, 2009. Gulley admitted to driving Blake around and being aware of Blake's drug-dealing venture: he explained that Blake received approximately 63 grams at a time, two to three days a week, and that Blake described his apartment at the Country Brook Apartments as his "stash house." More significantly, Gulley admitted that, on one occasion, Blake had given him a "bag" at the apartment complex and told him to deliver it to someone in the parking lot in exchange for $200. Gulley stated that he was drunk at the time and did not know what was in the bag. Additionally, Gulley admitted to selling cocaine for Blake "on one occasion," though he did not articulate a specific date or time.

The government prosecutor contacted Gulley's attorney on August 13, 2010, to discuss Gulley's participation at Blake's upcoming trial. Four days later, on August 17, the government was informed that Gulley would no longer cooperate—Gulley told his attorney that the government could dismiss the charge against him or proceed to trial. Gulley did not testify at Blake's trial, and the government considered that a violation of their agreement. The district court took judicial notice of the government's position on October 4, 2010.

Shortly before Gulley's first trial, the government filed an exhibit list that included, among other things, a video recording from the October 21 controlled buy, surveillance video from October 23, photos taken during the execution of the October 31 search warrants, and the *Miranda* warning form from October 31. In response,

Gulley's counsel filed an "Objection to Exhibits and Instructions" that asked the court to exclude "items of evidence that pertain to dates other than October 21, 2008," including "videos and tapes." Also filed was a general, catch-all motion in limine—which we discuss in more detail below—asking the court to exclude evidence of "bad conduct" that occurred on "dates different than October 21, 2008." The district court denied the motion without a hearing, concluding that the evidence referred to in the motion in limine was relevant under Federal Rule of Evidence 401 and not unduly prejudicial under Rule 403.

The case proceeded to trial on October 4, 2010. The government called five witnesses—Officer Henson; Officer Yandell; Hope Erwin, a forensic drug chemist; Task Force Agent Turner; and Heard. Gulley called none. The district judge declared a mistrial after the jury said it was "hopelessly deadlocked."

A second jury trial began on February 7, 2011. The government called the same five witnesses; Gulley again called none. The government witnesses testified regarding many of Gulley's admissions about his relationship with Blake, statements discussing crack cocaine on the October 21 and 23 recordings, the purpose of conducting surveillance outside the residence Blake shared with his girlfriend, and drugs and a firearm being found at the Country Brook Apartments stash house on October 31. Gulley's counsel did not object at trial to any of this information on Rule 403 or 404(b) grounds.

The jury found Gulley guilty on the single count charged.

A sentencing hearing was held in October 2011. The Presentence Investigation Report (PSR) stated that Gulley was a career offender, *see* U.S.S.G. § 4B1.1, and had an offense level of 37 and a criminal history category of VI. This resulted in a recommended U.S. Sentencing Guidelines range of 360 months to life imprisonment. Gulley objected to the PSR and asked the court to consider the FSA, which would have resulted in an offense level of 34—and a lower Guidelines range. The district judge rejected Gulley's request and accepted the PSR because our then-precedent was that the FSA did not apply to criminal conduct occurring before the FSA came into effect. Ultimately, however, the judge varied from the Guidelines range and sentenced Gulley to 327 months' imprisonment, followed by an 8-year term of supervised release.

## II. DISCUSSION

On appeal, Gulley finds fault with the admission of certain evidence at trial, as well as the Guidelines calculation the district judge relied on when sentencing Gulley. We address each issue in turn.

### A. Evidence at Trial

Gulley contends that certain testimony was inadmissible under Federal Rule of Evidence 404(b) and that its admission denied him a fair trial. A district court's

decision as to the admissibility of evidence at trial is generally reviewed for an abuse of discretion. *United States v. Collins*, No. 11-3098, 2013 U.S. App. LEXIS 9721, at *6 (7th Cir. May 15, 2013). The parties here, however, disagree as to whether Gulley's counsel made a proper objection to preserve the issue for appeal; if not, the plain error standard applies. *See United States v. Wolfe*, 701 F.3d 1206, 1211 (7th Cir. 2012).

We have explained that, "[i]n order to preserve a ruling on the admission of evidence for appeal, a party must make 'a timely objection or motion to strike [which] appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.'" *United States v. Rollins*, 544 F.3d 820, 834 (7th Cir. 2008) (quoting Fed. R. Evid. 103(a)(1)). Gulley did not object to the testimony on Rule 404(b) grounds at trial, but before trial, Gulley's counsel filed a terse motion in limine with the following language:

> The Defendant asks that the Plaintiff be prohibited from introducing testimony, videos, tapes and exhibits which pertain to dates other than October 21, 2008. The Plaintiff has filed a single charge and it should not be allowed to attempt to show other bad conduct to prejudice the Defendant on the Indictment charge.

Gulley contends this was sufficient to preserve the issue, but the motion was devoid of the specifics necessary to satisfy the requirements of Rule 103. The district court had no way of identifying exactly what type of "bad conduct" Gulley was referring to, when and where it occurred, or on what grounds the motion relied. *See*

*Rollins*, 544 F.3d at 834 (concluding that the admission of testimony would be reviewed for plain error because the grounds the defendant asserted on appeal "were neither stated specifically nor apparent from context").

We will review the testimony at issue for plain error.

Now to the merits: Federal Rule of Evidence 404(b) prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, such evidence may be admissible for another purpose, including to prove opportunity, knowledge, or identity. Fed. R. Evid. 404(b)(2). In determining whether evidence was admissible under Rule 404(b), we consider whether: (1) the evidence was directed towards establishing a matter at issue other than the defendant's propensity to commit the crime charged; (2) the evidence showed that the other act was similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence was sufficient to support a jury finding that the defendant committed the act; and (4) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, as required by Rule 403. *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011).

The government called witnesses to testify that Gulley admitted to occasionally driving Blake around so that Blake could sell crack cocaine; Gulley was aware and had knowledge of Blake's drug-dealing activities; and Gulley drove Blake to meet with Heard on October 23, 2008, to complete a crack cocaine deal for which Gulley was not

charged. The witnesses also testified that crack cocaine, ecstasy, and a firearm were found during a search of Blake's stash house on October 31, the day Gulley and Blake were arrested. Gulley contends this testimony was improper because it was not relevant, was only offered to show Gulley's "pattern or propensity" to commit crimes, and was unduly prejudicial. The government argues that the information was admissible for reasons unrelated to Rule 404, as well as under the Rule 404(b) exceptions. We need not address the government's other explanations because the evidence was admissible under the 404(b) exceptions.

As to the first prong: the crime charged (violating 21 U.S.C. §§ 841(a) and 841(b)(1)(B)) required the government to establish that Gulley "knowingly and intentionally" delivered a controlled substance on October 21, 2008. Gulley's counsel highlighted this requirement during his opening statement and told the jury,

> And that's what we're talking about here, is a person that was in the area at the time in question, [who] was not distributing cocaine as suggested by the government in this matter. . . . After you hear all of the evidence in this case in this matter, you will not be convinced beyond a reasonable doubt that there's been any showing of a knowing and intelligent, voluntary distribution of cocaine by Mr. Gulley on the date in question.[1]

---

[1] During opening statements in the first trial, Gulley's counsel told the jury, "And the charge, actually, is that he distrib-
(continued...)

And in his closing argument when discussing the October 21 video, Gulley's counsel stated, "If he just is handing something over without paying attention to it, that's not a knowing violation of the law whatsoever."

The defense did not call any witnesses at trial, nor did Gulley testify, but it is clear that Gulley's "defense" went to his state of mind—i.e., even if Gulley delivered "something" on October 21, he did not know what it was; and if that "something" was a controlled substance, Gulley did not intentionally deliver it.[2] The defense was more than a general denial and a plea of "not guilty." *Cf. United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012).

The government was, therefore, entitled to put forth evidence to rebut the defense, *see United States v. Conner*, 583 F.3d 1011, 1023 (7th Cir. 2009) ("The government is not relieved of its burden of proving an element simply because [the defendant] did not challenge it. To hold otherwise would be to tie the hands of the government in meeting its burden of proof where no

---

[1] (...continued)
uted—'knowingly and intelligently' is the full charge there. Sometimes people get up and say 'knowingly,' but it's a two-pronged requirement that the government has on them in these proceedings."

[2] Gulley's counsel also argued that Gulley was not the man on the October 21 video recording or the person in the car with Heard, but it is unnecessary for us to explain why the evidence at issue may have been admissible under other Rule 404(b) exceptions, like identity or opportunity.

defense was presented on an element, or indeed, an entire charge.") (internal citation omitted); *see also United States v. Villegas*, 655 F.3d 662, 672 (7th Cir. 2011) (explaining that the principle of door opening "depends on the specific situation in which it is used and thus calls for an exercise of judicial discretion"), and the testimony at issue went directly to Gulley's knowledge on October 21: if Gulley drove around a known drug dealer, had access to illegal drugs and a firearm, and witnessed an illegal drug transaction two days after the charged offense under circumstances similar to the charged offense, it was more likely that Gulley knew the clear bag he gave Heard contained crack cocaine. *See Conner*, 583 F.3d at 1022 (stating that evidence of the defendant's relationship with a known drug dealer and the defendant's "extensive history of prior drug activities" was admissible under the 404(b) exceptions because it tended to show that the defendant "was not simply an innocent bystander" to the drug transaction).

With respect to the second prong, we think the testimony described conduct that was similar enough and close enough in time to be relevant to the charged offense. Initially, time proximity is not at issue; the testimony involved events occurring shortly before October 21, two days after on October 23, and ten days after on October 31. Gulley's main argument is that the evidence was not "similar enough." However, the fact Gulley knew that Blake dealt drugs, including crack cocaine—the drug he was charged with dealing—and drove Blake to meet with Heard, the person he was charged with dealing to, at the same place he

was charged with dealing, is directly on point with the charged offense.

Gulley has a stronger argument regarding the ecstasy and firearm that were found on October 31: ecstasy is not crack cocaine, and the charged offense did not include the use of a firearm. Nevertheless, our analysis of the prong "need not be unduly rigid," *United States v. Wheeler*, 540 F.3d 683, 692 (7th Cir. 2008); our focus is on "establishing the relevancy of the 404(b) evidence." *United States v. Foster*, 652 F.3d 776, 785-86 (7th Cir. 2011). "Simple differences in the type of conduct or charge at issue cannot defeat the similarity requirement." *United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996).

Here, the evidence was offered to show Gulley's knowledge of what was in the bag he gave Heard. It goes without saying that a person with access to ecstasy at a stash house, especially in the presence of a firearm, is more likely to know what crack cocaine is than someone lacking experience with (or access to) either. We do not think the simple differences between crack cocaine and ecstasy undermined the relevance of the information to the government's argument; at the end of the day, both are illegal drugs. Similarly, it is widely known that guns and drugs go hand in hand. *See United States v. Perez*, 581 F.3d 539, 547 (7th Cir. 2009) (explaining that "weapons are 'recognized tools of the drug trade' and . . . the possession of a gun can advance the possession and future distribution of narcotics by protecting the drugs or the drug dealer" (quoting *United v. Duran*, 407 F.3d 828, 838 (7th Cir. 2005))); *United States*

*v. Ramirez*, 45 F.3d 1096, 1103 (7th Cir. 1995) ("[W]eapons are tools of the narcotics trade such that this evidence is admissible."). The inference between Gulley having access to guns and drugs and knowing what was in the bag does not require an inordinate stretch of the imagination. And under the facts of this case, we do not believe the offense charged needed to include "use of a firearm" to make the firearm evidence "similar enough" so as to be relevant.

We briefly note Gulley's barebones assertion that the items cannot be "sufficiently similar" because he was not at the stash house when the items were recovered, but that is a non-starter. The argument is better aimed at the forth prong. *See United States v. Gomez*, 712 F.3d 1146, 1154 (7th Cir. 2013) ("Assessing the extent of [the evidence's probative value] is a matter for the fourth prong of the analysis.").

The third prong is easily satisfied. The government witnesses' testimony was consistent: Gulley admitted that he knew Blake's "business" and that he drove Blake around as Blake received, stored, and sold crack cocaine from a stash house. Surely an individual's own statements are sufficient to support a jury finding that the individual participated in the acts at issue. Furthermore, eyewitness testimony can provide the foundation for a "reasonable finding by the jury." *United States v. Howard*, 692 F.3d 697, 706 (7th Cir. 2012). All but one of the witnesses observed the October 23 "deal," and they testified to the same facts as those captured on the video and audio recordings. And finally, Gulley has not

challenged the execution of the search warrants on October 31, or the collection of evidence at the stash house or the residence, which we assume were done properly. We think the evidence was sufficient to support a jury finding that the other acts at issue occurred.

Lastly, Gulley contends the evidence was unduly prejudicial under the fourth prong of the test, Rule 403. But we can hardly fault the district judge for not conducting a more thorough balancing test when the testimony was never properly objected to. *See United States v. Baker*, 655 F.3d 677, 682 (7th Cir. 2011) ("[A] district court is not under an obligation to make every evidentiary ruling orally; had [the defendant] wanted an oral ruling, he should have objected on Rule 403 and Rule 404(b) grounds."). The same goes for Gulley's criticism of the judge for failing to give a limiting instruction. A limiting instruction might have been helpful, *see United States v. Moore*, 531 F.3d 496, 500 (7th Cir. 2008), but Gulley concedes that he never requested one. *See United States v. White*, 698 F.3d 1005, 1018 (7th Cir. 2012) (holding that evidence admitted under a Rule 404(b) exception was not unduly prejudicial even though the defendant never sought, and the district court never tendered, a specific limiting instruction).

Even so, the court will tolerate a greater risk of prejudice when the evidence is more probative. *United States v. Miller*, 688 F.3d 322, 329 (7th Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). In this case, the evidence was extremely probative as it went to the core of the issue before the jury—did Gulley know

what was in that clear plastic bag when he gave it to Heard for $200? It was not merely tangentially-related to the charge against Gulley or his defense. Although the ecstasy and firearm evidence is a closer call, we are not convinced the probative value was *substantially* out-weighed by the danger of unfair prejudice. When viewed in light of the sliding scale, none of the testimony was so prejudicial that it induced the jury to decide the case on an improper basis. *See United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012); *United States v. Albiola*, 624 F.3d 431, 440 (7th Cir. 2010).

Gulley has not demonstrated that the district court erred in the admission of the evidence discussed above, let alone satisfied the plain error standard. Accordingly, we conclude that the evidence was properly admitted.

As a final matter, the district court overruled an objection at trial to Officer Yandell's testimony that Gulley admitted he was "on parole" at the time of his arrest. The government and Gully both agree that the district court abused its discretion by doing so. But we will only grant a new trial for a single evidentiary error if the "error likely had a substantial effect on the jury's verdict and the result was inconsistent with sub-stantial justice." *Jordan v. Binns*, 712 F.3d 1123, 1137 (7th Cir. 2013). Here, Gulley's parole status was only mentioned by one witness, on one occasion, and neither party referred to it again throughout the rest of the trial. Moreover, the details underlying the conviction and subsequent prison term were never discussed. We think the minor misstep was harmless beyond a reasonable doubt.

## B. Sentencing Guidelines Calculation

Gulley contends the district court's failure to apply the FSA was an error that requires us to remand for resentencing. We review the district court's procedures in calculating a sentence *de novo* and its factual findings for clear error. *United States v. Fluker*, 698 F.3d 988, 1001 (7th Cir. 2012).

Congress passed the FSA in 2010, which reduced the sentencing disparity between crack cocaine and powder cocaine offenders. *See* Fair Sentencing Act of 2010, Pub. L. No. 11-220, 124 Stat. 2372 (2010). Prior to the FSA, for a defendant in Gulley's position—a person with a prior felony drug conviction who was convicted of distributing more than 5, but less than 28, grams of cocaine—the base offense level would have been 37, with the applicable Guidelines range including a maximum term of life imprisonment followed by a minimum of 8 years' supervised release; as opposed to a base offense level of 34, with a maximum term of 360 months' imprisonment, followed by a minimum of 6 years of supervised release. *Compare* 21 U.S.C. § 841(b)(1)(B) (2006), *with* 21 U.S.C. § 841(b)(1)(C) (2012). When Gulley was sentenced, our precedent was that the FSA did not apply retroactively to criminal conduct that occurred prior to the FSA's passing. *See, e.g., United States v. Campbell*, 659 F.3d 607, 609 (7th Cir. 2011), *vacated and remanded*, 133 S. Ct. 190 (2012). The district court followed that precedent when calculating Gulley's Guidelines range. In *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321 (2012), however, the Supreme Court held that the

FSA's statutory penalties apply to defendants sentenced after its effective date, August 3, 2010, even if the defendant's underlying criminal conduct occurred prior.

Gulley's sentencing hearing was held on October 24, 2011; both parties agree the FSA applied in light of *Dorsey*. The issue before us is whether the failure to apply the FSA was harmless, or in other words, whether we are convinced the judge would have imposed the same sentence but for the procedural error. *See United States v. Tovar-Pina*, 713 F.3d 1143, Nos. 12-1964, 12-1965 & 12-1966, 2013 U.S. App. LEXIS 8588, at *11-12 (7th Cir. Apr. 29, 2013).

Gulley was sentenced to 327 months in prison, followed by an 8-year term of supervised release. The government concedes that the failure to apply the FSA might have affected Gulley's term of supervised release. We concur and, thus, turn our attention to whether the error also might have affected Gulley's prison term.

In support of its position that the error did not affect Gulley's prison term, the government argues that the district judge actually applied the FSA when it varied from the applicable Guidelines range at the time by lowering Gulley's offense level from 37 to 34, the same number of levels it would be lowered by the FSA, and by recalculating the advisory Guidelines range as 262 to 327 months' imprisonment, also the same as that applicable under the FSA. We are mindful of this variance, but it is the government's burden to prove the sentencing error was harmless, *e.g.*, *United States v. Suggs*, 624 F.3d 370, 376 (7th Cir. 2010), and the sen-

tencing transcript here is, at best, murky. The district judge practically invited an appeal of the sentence he was going to impose before describing the rationale behind Gulley's sentence:

> And the Seventh Circuit has said, as I made clear, that the Fair Sentencing Act in the case of *United States v. Fisher*, decided this year, and *United States v. Campbell*, did not apply to you. You may get relief from the Supreme Court of the United States, and so be it. They will make the final decision as to which circuit is correct. But you are being sentenced today in the State of Illinois, in the Seventh Circuit, and I must follow the law of this circuit. So Fair Sentencing doesn't apply.

And after explaining his rationale, the judge further stated, "And, very frankly, I hope the Supreme Court rules in your way. That will be their choice, and we'll see what happens."

Again, we know the judge varied from the applicable Guidelines range; however, there are at least two reasons that could support the decision: the judge's desire to comply with the spirit of the FSA or, alternatively, other facts unique to Gulley. The judge did not explicitly explain the departure, *cf. United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008) (concluding that the sentencing error was harmless because the district judge "clearly stated" he would impose the same sentence even if his Guidelines calculation was incorrect), and we are not convinced the judge would have imposed the same sentence if the FSA had ap-

plied—he may have, but we cannot be "certain." *See United States v. Zahursky*, 580 F.3d 515, 528 (7th Cir. 2009). We, therefore, vacate Gulley's prison and supervised release terms and remand for resentencing using the correct Guidelines range.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Gulley's conviction but VACATE his sentence and REMAND for further proceedings consistent with this opinion.