In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-2398

DAVID L. DAY, JR.,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cv-00015-TWP-DLP — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 30, 2020 — DECIDED JUNE 24, 2020

Before MANION, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* David Day, Jr., was indicted for con-
spiracy to commit wire fraud stemming from his participa-
tion in a fraudulent "credit repair" scheme operating in
Indianapolis. The government offered Day a favorable plea
deal that would have yielded a probable Guidelines sentenc-
ing range of 51 to 63 months in prison. Day's federal defend-
er advised him to accept the deal. He was prepared to do so,
but his father urged him to consult a private lawyer—an

acquaintance of his with no experience in criminal law. That lawyer brought in an attorney experienced in federal criminal law, and the two told Day that he was not guilty of any crime and should reject the government's offer. Day accepted that advice and hired the private lawyers for a hefty fee raised by his family. The federal defender withdrew and offered to make her case file available to new counsel.

After the substitution of counsel, the government again extended the same plea offer about six weeks before the trial date. Though they hadn't yet reviewed the case materials, Day's new private lawyers again advised him to reject it. Day followed their advice and declined the deal. At the final pretrial hearing a month later, Day again rejected the government's plea offer on the record. Then, soon after the hearing, the two lawyers met with Day and for the first time told him he would lose at trial. Shocked, Day told them to try to get the best deal they could. They instead advised him to plead guilty and throw himself on the mercy of the court.

Four days later, Day pleaded guilty without an agreement. When the dust settled, he faced a sentencing range of 87 to 108 months. The district judge imposed a 92-month prison sentence. Day filed a pro se motion for relief under 28 U.S.C. § 2255, arguing that his private attorneys were constitutionally ineffective for advising him to reject the favorable plea offer. The judge denied the motion without an evidentiary hearing.

That was error. The government now concedes the deficient-performance element of Day's Sixth Amendment claim, and the facts set forth in his motion, if proven, could establish prejudice. We vacate and remand for further proceedings.

# I. Background

## A. Criminal Proceedings

We draw the following account of the case from the court record and Day's § 2255 motion. Beginning in or around 2012, Day participated in a fraudulent scheme disguised as a "credit repair service" for people with poor credit history. As part of the scam, he sold misappropriated social-security numbers to coconspirator "customers" with instructions on how to use their new "credit profile number" to apply for retail credit lines, which they then used to obtain larger loans. Federal authorities eventually caught on, and in September 2013 a grand jury returned a 34-count indictment against Day and 17 coconspirators. Day faced one count of conspiracy to commit wire fraud, 18 U.S.C. §§ 1343 and 1349, and one count of making false statements in loan and credit applications, *id.* § 1014. Federal defender Monica Foster was appointed to represent him.

In June 2014 the government offered Day a plea deal: if he would plead guilty to the conspiracy count, the government would move to dismiss the other count, stipulate to a total offense level of 24, and recommend a sentence at the low end of the Guidelines range. The agreement did not specify a criminal-history category or Guidelines range. But as the prosecutor later explained in a declaration, everyone expected that with an offense level of 24 and Day's criminal-history category of I, the resulting Guidelines range would be 51 to 63 months in prison. The agreement would be submitted under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and thus would not bind the court. As Day recounts the plea negotiations, Foster told him that he could "reasonably expect" the government to move for a

departure based on his post-plea cooperation with authorities, *see* U.S.S.G. § 5K1.1, which could reduce the bottom of the Guidelines range to as low as 36 months.

Foster advised Day to accept the offer because she believed that he had no viable defense. Day avers, however, that Foster also told him that she thought the government would accept a 40-month sentence under a binding plea agreement pursuant to Rule 11(c)(1)(C). Day asked her to approach the government with that proposal. But if the government rejected Foster's counteroffer, he was ready to accept the government's initial offer.

Meanwhile, at his father's urging, Day sought a second opinion from private attorney John Schwartz, an acquaintance of his father with no criminal-law experience. After their first meeting, Schwartz said that he would "look into" Day's case. At a second meeting, Schwartz brought in John Christ, a lawyer with experience in federal criminal law. Day alleges that after he showed the attorneys some websites offering similar "credit repair" services, they told him that he was not guilty of any offense because he "could not be convicted for conduct that others were engaging in openly." Without reviewing the case (and without disclosing that they had not done so), Schwartz and Christ advised Day to reject the plea deal and retain them for $30,000 to take the case to trial. Day accepted that advice.

Day's father paid the $30,000 fee over the next several months. Foster told Schwartz and Christ that the full case file was available for pickup at her office. The file contained the government's discovery, including grand-jury transcripts and transcripts of Day's inculpatory interview with federal agents. Schwartz and Christ filed their formal appearances

on December 12, 2014, and Foster then withdrew. Three days later Schwartz and Christ moved to continue the trial, which was scheduled to begin on January 26, 2015. They told the court that Foster was still "in the process of forwarding the discovery materials," which they had "not yet received." The judge denied the motion.

On December 17 the government sent the same plea offer it had proposed in June. Day's attorneys discussed the offer with him "on or about" the third week of December and were "dismissive" of it, assuring him that he could win at trial because he had a "strong defense that what [he] had been doing was lawful." On the strength of that advice and believing that his attorneys had reviewed the discovery materials, Day turned down the government's offer.

The pretrial hearing was scheduled for early January. On December 22 Day's attorneys moved to postpone it, explaining that they had "received extensive discovery materials from the U.S. Attorney and the Federal Defender on … December 19." The judge granted the motion.

The judge convened the rescheduled final pretrial hearing on January 12. It did not go as Day had hoped. His counsel arrived late and displayed a significant lack of preparation for trial, which was less than two weeks away. Day's attorneys again sought a continuance to no avail. Even so, Day formally rejected the government's renewed plea offer in open court.

After the hearing Day's attorneys met with him and for the first time advised him that based on the strength of the government's evidence, he would lose at trial. Shocked at this sudden change of advice, Day told his attorneys that he

wanted to plead guilty and instructed them to get him "the best deal they could negotiate." Schwartz and Christ told him that he would be better off pleading guilty without an agreement and throwing himself on the mercy of the court.

On January 16—four days after formally rejecting the government's renewed plea offer in open court—Day pleaded guilty to the conspiracy count without a plea agreement. The government orally agreed to dismiss the remaining count but made no other concessions or promises.

The presentence report recommended that the court adopt a total Guidelines offense level of 33, which included greater enhancements than the government had agreed to in the plea offer and also omitted a reduction for acceptance of responsibility.[1] With Day's criminal-history category of I, the PSR recommended a sentencing range of 135–168 months. A later addendum noted that the government had moved under § 5K1.1 for a 2-level reduction based on Day's cooperation following his guilty plea.

At sentencing the judge reduced the offense level by two levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1,

---

[1] The PSR and the proposed plea agreement both used a base offense level of 7, U.S.S.G. § 2B1.1(a), and added a 2-level enhancement for the unauthorized transfer or use of any means of identification (here, a social-security number) to obtain any other means of identification (here, a loan account), *id.* § 2B1.1(b)(11)(C)(i). But they differed on three other enhancements. The PSR added 16 levels for loss amount, *id.* § 2B1.1(b)(1)(I), 4 levels for the number of victims, *id.* § 2B1.1(b)(2)(B), and 4 levels for Day's role in the offense, *id.* § 3B1.1(a). In contrast the proposed plea agreement stipulated to a 14-level enhancement for loss amount, 2 levels for the number of victims, and 2 levels for Day's role in the offense.

but otherwise adopted the PSR's recommendations with no objection from defense counsel. By this time Christ had withdrawn and only Schwartz represented Day. The adjusted offense level was 31—seven levels higher than the government's plea offer had contemplated—resulting in a final Guidelines range of 108–135 months. The judge granted the government's § 5K1.1 motion, lowering the range to 87–108 months. After considering the 18 U.S.C. § 3553(a) sentencing factors, the judge imposed a term of 92 months in prison.

At some point after sentencing, Day spoke to Foster and learned that Schwartz and Christ never picked up the case file.

## B. Motion to Vacate Sentence

Proceeding pro se, Day filed a § 2255 motion to vacate his sentence, asserting that Schwartz and Christ were constitutionally ineffective for advising him to reject the government's plea offers despite never reviewing Foster's case file or the government's discovery.[2] Day's motion characterized the government's initial plea offer as proposing a sentence of "about 36 months" and the second as offering "about 54 months." He alleged that if counsel had properly advised him, he would have accepted either offer, which likely would have resulted in a sentence much lower than 92 months.

The government opposed the motion, explaining that a plea offer of 36 months in prison was never on the table. The

---

[2] Day also alleged that Schwartz and Christ were ineffective for three other reasons not at issue here.

government also argued that Day could not establish that he was prejudiced by his attorneys' advice to reject the plea deal that actually *was* offered—a recommended sentencing range of 51 to 63 months—because nothing in the record suggested that Day would have accepted it. And even if Day could show that he would have accepted the deal, he could not establish that he would have received less prison time because the proffered plea agreement was not binding on the judge. Finally, the government advised the court that it had requested affidavits from Day's private attorneys, but Schwartz declined to provide one and Christ did not respond.

In his reply Day sought to clarify his statements about the plea offers. He explained that he had described the government's first offer as he understood it at the time, accounting for a possible reduction based on his post-plea cooperation. In other words, the 36-month offer he described was the government's original 51–63 month offer, with the possibility of credit for his cooperation as Foster had predicted; the December plea offer involved the same terms. Day also submitted sworn declarations from himself and his father to support his version of events and argued that the government's response showed that an evidentiary hearing was necessary.

The judge denied the § 2255 motion without a hearing, explaining that Day had not made the required threshold showing to warrant one. Apparently overlooking the clarification in Day's reply submission, the judge described his allegations as referring to two separate plea offers: one agreeing to a sentence "of about 36 months" and a second offer of 54 months. That was inconsistent with the record,

which established unequivocally that there was a single plea offer presented on two occasions.

Moving on to the elements of a Sixth Amendment claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), *see Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (applying *Strickland* to plea bargaining), the judge reasoned that the advice from Day's attorneys did not amount to deficient performance but was instead a reasonable strategic decision. The judge also held that Day could not establish prejudice because even if he had accepted the plea offer, its terms were not binding on the court.

Day appealed. We granted a certificate of appealability and recruited pro bono counsel to assist him.[3]

## II. Discussion

Day challenges the judge's decision to deny his § 2255 motion without an evidentiary hearing. We review a decision to forgo an evidentiary hearing for an abuse of discretion. *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017). A hearing is required when "a petitioner alleges facts that, if true, would entitle him to relief." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016) (quotation marks omitted). But a judge may deny a hearing if the petitioner's allegations are "too vague and conclusory," *id.*, or if "the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b).

---

[3] Attorney Caroline A. Flynn of Latham & Watkins LLP accepted representation and has ably discharged her duties. We thank her for her assistance to her client and the court.

Day argues that he is entitled to an evidentiary hearing because his allegations, if proven, establish both elements of his *Strickland* claim: (1) his attorneys' performance during the plea-bargaining phase fell below an objective standard of reasonableness and (2) their deficient performance caused prejudice. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012). In response, the government now concedes that Schwartz and Christ performed deficiently when they advised Day to reject the renewed plea offer. Still, the government argues that no hearing is needed because Day cannot show prejudice.

To prove *Strickland* prejudice in the plea-bargaining context, the defendant must show a reasonable probability that he would have accepted the government's plea offer but for the ineffective advice of his attorneys *and* that the court would have accepted the agreement and imposed a less severe sentence. *Id.* at 163–64. More specifically, Day must prove two things: (1) it is reasonably probable that but for the incompetent advice of his attorneys, he would have accepted the government's renewed plea offer and pleaded guilty; and (2) it is reasonably probable that the judge would have imposed a lower sentence. In the government's view, the existing record conclusively establishes Day cannot make either showing.

We see things differently. As a preliminary matter, the judge's decision to forgo an evidentiary hearing appears to rest on a misreading of Day's submissions. She construed his § 2255 motion as describing two distinct plea offers—one for 36 months and another for 54 months—when the record clearly established that the government made a single offer and renewed it after the substitution of counsel. The judge

apparently overlooked the clarification in Day's reply brief. In the end, everyone agreed that the government presented the same offer twice, stipulating to an advisory Guidelines of 51 to 63 months.

That misstep aside, the judge's no-prejudice ruling rests on a flawed legal analysis. The judge held that Day could not show prejudice because the plea agreement would not bind the court to a particular sentence. But the proper inquiry is not whether the sentencing court is bound by a plea agreement, but whether it is reasonably probable that the court "would have accepted its terms," and the resulting sentence "would have been less severe" than the one that was actually imposed. *Id.* at 164; *see also United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000) (remanding to consider whether, if a prisoner had been advised to accept deal, the court "would have imposed a sentence that differed from the government's recommendation").

The judge's prejudice analysis also overlooks the practical realities of plea negotiations. Few court observers would contend that the government's views as reflected in its plea stipulations and Guidelines recommendations have no influence on a judge's real-world sentencing decisions. *See, e.g.*, Shayna M. Sigman, *An Analysis of Rule 11 Plea Bargain Options*, 66 U. CHI. L. REV. 1317, 1324 (1999) ("[J]udges usually follow the nonbinding recommendation in [Rule 11] type B agreements" in part because they know that "not accept[ing] prosecutors' sentenc[ing] recommendations … will hamper … [plea negotiations] in future cases."). Why would prosecutors offer nonbinding plea agreements—and defendants accept them—if they count for nothing in the sentencing decision?

Had the probation office been presented with the plea agreement and its factual stipulations, it is reasonably probable that the recommendations in the PSR would have agreed with the government's stipulations regarding the applicable offense-level enhancements. *See Justice Manual*, U.S. DEP'T OF JUSTICE, § 9-27.430 cmt. 2 (Feb. 2018), https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution#9-27.430 (noting that the DOJ policy on plea agreements is to "only … stipulate to facts that accurately reflect the defendant's conduct"). But even if the probation officer had not agreed, there's a reasonable probability that the judge would have accepted the parties' stipulations over the PSR's recommendations based on the government's representations. If a PSR includes "facts that are inconsistent with a stipulation in which a prosecutor has joined," DOJ policy obligates the prosecutor to "object to the report or add a statement explaining the prosecutor's understanding of the facts or the reason for the stipulation." *Id.*

In a new argument raised for the first time on appeal, the government argues that the judge properly denied Day's motion without a hearing because competent counsel—Foster, his federal defender—previously advised him to accept the plea deal, but he chose not to do so. In the government's view, Foster's sound advice bars a *Strickland* claim based on the later ineffectiveness of substitute counsel. But the Sixth Amendment right to the effective assistance of counsel "extends to the plea-bargaining *process*," not just to discrete parts of it. *Cooper*, 566 U.S. at 162 (emphasis added); *see also Missouri v. Frye*, 56 U.S. 134, 143 (2012) (noting that the "plea-bargaining process is often in flux, with no clear standards or timelines").

Here, the government *reoffered* the plea deal as trial drew near, giving Day the renewed option to accept it. He was entitled to the effective assistance of counsel as he made his decision. *See Strickland*, 466 U.S. at 690 (noting that courts "must judge the reasonableness of counsel's challenged conduct … as of the time of counsel's conduct"). Schwartz and Christ advised Day to reject the renewed plea offer—advice that the government now concedes was constitutionally deficient. That distinguishes Day's situation from the out-of-circuit cases the government cites in which multiple attorneys gave conflicting advice at the *same* time about the same plea offer. *See, e.g.*, *Clark v. Chappell*, 936 F.3d 944, 969 (9th Cir. 2019) (concluding that the petitioner was not prejudiced by one attorney's advice to reject a plea deal because another of his attorneys advised him to accept it); *Logan v. United States*, 910 F.3d 864, 869–70 (6th Cir. 2018) (ruling that the petitioner who received "both competent and deficient advice on whether to accept the February 19 plea offer" received effective assistance). Moreover, the record indicates that Day planned to follow Foster's advice and accept the offer before he received the deficient advice from the other attorneys.

If Day was wrong to reject his first attorney's advice regarding a plea, he may well have changed his mind if his new attorneys had told him so. As Day's argument suggests, a defendant who seeks a second opinion and then learns that the second lawyer *agrees* with the first lawyer is likelier to accept a renewed plea offer than one who receives conflicting advice. At the very least, an evidentiary hearing is needed to test that proposition.

The government warns that ruling in Day's favor will produce "absurd results" by "encourag[ing] defendants to engage incompetent attorneys." That strikes us as an entirely unrealistic concern.

The question of prejudice remains, and it requires further factual development. The judge did not address whether it is reasonably probable that Day would have accepted the renewed plea offer had Schwartz and Christ advised him to do so. The government contends that nothing in the record supports Day's allegation, but we disagree. Day's father submitted a declaration corroborating his son's assertion that he would have accepted the deal. *See Sawyer*, 874 F.3d at 279 (noting that "district courts may not discount a petitioner's declarations simply because they may be self-serving" and relying on corroborating affidavits from family members). Other aspects of the record support Day's position, including the fact that he pleaded guilty without an agreement just days after rejecting the renewed plea offer and he cooperated with the government thereafter. *Cf. Frye*, 566 U.S. at 150 ("The Court of Appeals did not err in finding Frye's acceptance of the less favorable [open] plea offer indicated that he would have accepted the earlier (and more favorable) offer, had he been apprised of it … ."). Day has met his "relatively light" burden to warrant an evidentiary hearing on his claim. *Torres-Chavez*, 828 F.3d at 586.

If on remand Day establishes a reasonable probability that he would have accepted the renewed plea offer but for the incompetent advice of his attorneys, his work is not yet done. Day must still show a reasonable probability that he would have received a sentence lower than 92 months. *See Frye*, 566 U.S. at 148–49. If he does so, then the judge should

grant Day's § 2255 motion and, within her discretion, craft an appropriate remedy. *See Cooper*, 566 U.S. at 170–72 (providing guidance on remedies); *Estremera v. United States*, 724 F.3d 773, 779 (7th Cir. 2013) (noting that there may be "permissible remed[ies]" beyond directing the prosecutor to reoffer a rejected plea deal).

Accordingly, we VACATE the judgment and REMAND for an evidentiary hearing on whether Day was prejudiced by the constitutionally deficient performance of his lawyers.