In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1221

DAVID A. RESNICK,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:18-cv-00156-JTM — **James T. Moody**, *Judge.*

ARGUED MAY 21, 2021 — DECIDED AUGUST 3, 2021

Before SYKES, *Chief Judge*, and RIPPLE and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. In adjudicating David Resnick's direct appeal from his conviction and life sentence for sexually abusing two young boys, we affirmed the judgment of the district court. *United States v. Resnick*, 823 F.3d 888 (7th Cir. 2016). Mr. Resnick then filed a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence, alleging that his defense counsel provided ineffective assistance. The district

court denied the motion, and Mr. Resnick filed a timely appeal to this court. We now conclude that the district court correctly determined that Mr. Resnick was not deprived of his Sixth Amendment right to effective assistance of counsel. Accordingly, we affirm the district court's judgment.

# I

# BACKGROUND

We summarized Mr. Resnick's offenses in our opinion affirming his conviction and sentence on direct appeal, *United States v. Resnick*, 823 F.3d at 890–92. We therefore will confine ourselves to the facts essential to an understanding of the issue presented here.

In 2008, Mr. Resnick, a long-haul trucker, took a nine-year-old boy, whom we will call A.M., along with him on a multi-week work trip.[1] Throughout that trip, Mr. Resnick repeatedly sexually assaulted A.M. and forced him to view child pornography. At one point, when Mr. Resnick was pulled over for skipping a weigh station, he put a gun to A.M.'s head and threatened to kill him and his family if he tried to tell anyone about the abuse. A.M. told no one about Mr. Resnick's actions for months after they returned to Indiana, where A.M. lived.

On another occasion, Mr. Resnick invited A.M. and A.M.'s friend, K.M., to a "pool party" at the hotel in Indiana where Mr. Resnick was staying. A.M. managed to leave the hotel early. K.M., who was eight years old at the time, was

---

[1] Some of the filings refer to A.M. as T.M. We will use A.M. for consistency with the district court's opinion.

less fortunate. Mr. Resnick invited K.M. to spend the night at the hotel, let K.M. hold a handgun, and then sexually abused the child. K.M. did not immediately tell anyone about the abuse, but eventually confided in his mother who alerted the police.

In April 2011, law enforcement executed a search warrant at Mr. Resnick's Florida home. They seized a laptop that A.M. later identified as the computer Mr. Resnick used to show him pornography during the 2008 trip. A search of Mr. Resnick's digital devices uncovered dozens of hours of child pornography videos. When FBI special agents interviewed him about A.M.'s and K.M.'s allegations, Mr. Resnick at first claimed not to know the boys. When questioned further, he changed his story and denied any inappropriate conduct. A grand jury in the Southern District of Florida indicted Mr. Resnick for possession of child pornography. He reached an agreement with federal prosecutors there and entered a guilty plea.

Later, a grand jury in the Northern District of Indiana indicted Mr. Resnick for his abuse of A.M. and K.M. These initial Indiana charges included aggravated sexual abuse of a minor and interstate transportation of child pornography, in violation of 18 U.S.C. §§ 2241(c) and 2252(a)(1). Mr. Resnick and the Government signed a plea agreement, but when a dispute arose over Mr. Resnick's refusal to admit to certain conduct during the change of plea hearing, the agreement fell apart.

The Government subsequently offered Mr. Resnick an amended plea deal intended to avoid the earlier sticking point, but Mr. Resnick rejected the Government's offer. After the breakdown in the plea negotiations, the Government ob-

tained a superseding indictment that added charges of brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

Mr. Resnick proceeded to trial; a jury convicted him on all counts. The court sentenced him to life imprisonment for the sexual abuse and to a consecutive seven years' imprisonment for the brandishing a firearm charge.

Mr. Resnick appealed his conviction and sentence. We affirmed. *Resnick*, 823 F.3d 888. When his conviction became final, Mr. Resnick filed this motion to vacate his conviction and sentence under 28 U.S.C. § 2255, alleging that his trial counsel was ineffective during the plea process, throughout the pretrial and trial proceedings, and at sentencing. The district court denied the motion, concluding that none of Mr. Resnick's alleged errors amounted to a violation of his Sixth Amendment right to effective assistance of counsel. Mr. Resnick now appeals the district court's order denying his motion.

## II

## DISCUSSION

When reviewing a district court's denial of a § 2255 motion, we review factual findings for clear error and legal conclusions de novo. *Hrobowski v. United States*, 904 F.3d 566, 569 (7th Cir. 2018). Mr. Resnick alleges fourteen errors by his trial counsel that, he contends, amount to ineffective assistance. We will address Mr. Resnick's allegation of ineffective assistance during the plea process, then discuss his allegations regarding the trial and sentencing proceedings.

**A.**

Mr. Resnick alleges that his counsel was ineffective during the plea process and that this ineffectiveness caused him to go to trial rather than plead guilty. Under the initial agreement, Mr. Resnick would plead guilty to a transportation of child pornography charge, in exchange for the Government's dismissing the aggravated sexual abuse of a minor charge (the gun charges had not yet been added via the superseding indictment). The agreement set forth a Sentencing Guidelines calculation that included two enhancements. The first was a seven-level enhancement under U.S.S.G. § 2G2.2(b)(3)(E) for distributing child pornography to a minor with the intention of persuading, inducing, enticing, coercing or facilitating the travel of a minor to engage in prohibited sexual conduct. The second was a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. Mr. Resnick and the Government further agreed that "a sentence within the applicable Guideline range [was] a fair and reasonable sentence" and that there was no basis for the court to impose a sentence outside that range.[2] Of note, Mr. Resnick's initial Guidelines range was life imprisonment, but because the statutory maximum was twenty years, twenty years became the applicable range. *See* U.S.S.G. § 5G1.1(a). Lastly, the plea agreement was conditioned on Mr. Resnick's demonstrating acceptance of responsibility and permitted the Government to withdraw from the deal if Mr. Resnick failed to do so.

---

[2] R.23 ¶ 7(d)(iii).

When the day of the change of plea hearing arrived, the agreement quickly fell apart. The Government set forth its factual basis for the plea, which included Mr. Resnick's showing child pornography to and sexually abusing A.M. When questioned by the presiding magistrate judge, Mr. Resnick flatly denied having had sexual contact with A.M. He also denied showing A.M. child pornography, claiming instead that A.M. "found it on [Mr. Resnick's] computer himself."[3] Both of these denials undermined the Guidelines enhancements included in the plea deal. Mr. Resnick told the magistrate judge that he was agreeing to the enhancements "for guideline purposes."[4] After an extended colloquy with the magistrate judge, Mr. Resnick admitted that he provided child pornography to A.M. He continued, however, to deny any sexual contact with A.M. during their trip. Mr. Resnick claimed that possessing child pornography would constitute the conduct needed to support the § 2G2.2(b)(5) enhancement, but the magistrate judge correctly noted that mere possession was insufficient.[5] By this point, the Government voiced concern that Mr. Resnick had denied under oath the basis for two of the enhancements in

---

[3] R.31 at 22.

[4] *Id.* at 23.

[5] U.S.S.G. § 2G2.2(b)(5) provides for a five-level enhancement "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The application notes to that Guidelines provision state that "'[s]exual abuse or exploitation' does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.* cmt. n.1.

the plea deal. The magistrate judge shared the concern, indicating that he would recommend that the district judge not accept the plea.

At a subsequent hearing, this time before the district judge, the Government again stated its view that Mr. Resnick's denials during the first hearing breached the agreement. The district court observed that there was "not really an agreement [be]cause he's not agreeing to all of the terms."[6] Mr. Resnick's counsel eventually conceded that there was no agreement, and the court set a date for trial.

Ahead of the trial date, the Government offered Mr. Resnick an amended plea agreement. Under the new offer, Mr. Resnick would plead guilty to transporting child pornography, in line with the first agreement, but without the enhancements that proved to be the sticking point at the change of plea hearing. The Government's new offer was under Federal Rule of Criminal Procedure 11(c)(1)(C) and would guarantee a twenty-year sentence if the court accepted the plea.[7] Mr. Resnick rejected the Government's amend-

---

[6] R.157 at 4.

[7] Federal Rule of Criminal Procedure 11(c)(1)(C) provides, in relevant part:

> An attorney for the government and the defendant's attorney … may discuss and reach a plea agreement. … If the defendant pleads guilty … to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> …

(continued … )

ed plea offer. Mr. Resnick's gamble did not pay off. After his conviction at trial, he was sentenced to life imprisonment.

Mr. Resnick now claims that his counsel was ineffective for failing to seek specific performance of the first plea agreement. To establish ineffectiveness during the plea process, Mr. Resnick must make two showings. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012). First, he must show that his counsel's performance fell below an objective standard of reasonableness. Second, he must show prejudice. *See id.* In the plea context, prejudice means showing both that it is reasonably probable that absent his attorney's deficient performance he would have pleaded guilty and that "it is reasonably probable that the judge would have imposed a lower sentence." *Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020); *see also Lafler*, 566 U.S. at 164.

We can resolve Mr. Resnick's submission on the prejudice prong. His rejection of the amended plea offer prevents him from establishing prejudice based on the first plea agreement. There was no meaningful difference between the first plea deal that Mr. Resnick claims his attorney should have enforced through specific performance and the subsequent amended offer that Mr. Resnick rejected. For the first

---

( … continued)

> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (*such a recommendation or request binds the court once the court accepts the plea agreement*).

*Id.* (emphasis added).

plea deal, Mr. Resnick had agreed that a Guidelines sentence without any departures or variances was reasonable. His Guidelines range was twenty years' imprisonment. For the amended plea offer that he rejected, the guaranteed sentence would have been the same twenty years' imprisonment.

Mr. Resnick contends, however, that because the amended offer that he rejected was made under Rule 11(c)(1)(C), the court could not have sentenced him below the Guidelines range, whereas the first deal maintained the district court's discretion to sentence him to less than twenty years. Thus, he submits that the amended offer was less favorable, and therefore did not remedy the alleged ineffectiveness of his counsel in failing to obtain specific performance of the first offer.

As he tries to distinguish the two plea offers, Mr. Resnick poses the wrong question. When addressing prejudice here, we do not ask whether the district court *could* have imposed a different sentence under the first plea agreement. Rather, we ask whether there is a reasonable probability that his sentencing outcome *would* have been different under the first agreement. *See Day*, 962 F.3d at 992 (asking whether "it is reasonably probable that the judge would have imposed a lower sentence"). In his brief and at oral argument, Mr. Resnick could not point to any reason why the district court would have sentenced him below the Guidelines range if counsel had obtained enforcement of the first plea deal. Although he repeatedly emphasizes that the court could have sentenced him to less than twenty years, that bald assertion does not satisfy the ineffective assistance standard of reasonable probability. Given his agreement in the first plea deal that the Guidelines sentence of twenty years was rea-

sonable, and the absence of any viable mitigation arguments, we are hard pressed to see why the district court would have sentenced Mr. Resnick to anything other than twenty years under the first plea deal. Indeed, even if we assume for argument's sake that counsel erred in not seeking enforcement of the first agreement, the amended plea offer would have remedied any harm. Mr. Resnick's rejection of the amended offer means that he, not trial counsel, is responsible for the sentence he ultimately received.

**B.**

Mr. Resnick also contends that his counsel was ineffective during the pretrial and trial proceedings. Again, to obtain relief he must show that his counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Mr. Resnick identifies ten alleged errors by trial counsel during the pretrial and trial proceedings that he says amount to ineffective assistance of counsel. None have merit.

**1.**

Mr. Resnick's first assignment of error relates to the testimony of the Government's expert witness concerning common features of child sexual abuse cases. During the trial, the Government called Supervisory Special Agent William Donaldson of the FBI's Behavioral Analysis Unit, who testified about common features of child sexual abuse investigations. His testimony included the ways in which offenders groom child victims and that those victims often do not immediately report their abuse. Special Agent Donaldson

also explained the importance of child pornography to offenders who abuse children. He relied in part on a study of child sexual abuse offenders, the "Butner study," to draw the connection between possession of child pornography and sexual abuse. Special Agent Donaldson's testimony was as an expert, and none of it related specifically to Mr. Resnick's conduct.

In his § 2255 motion, Mr. Resnick contended that his counsel was ineffective for failing to investigate, cross examine, or rebut Special Agent Donaldson's testimony. He included affidavits from an author of the Butner study and a forensic psychologist. The information in those affidavits, he says, would have provided his attorney a roadmap to rebut Special Agent Donaldson's testimony. The district court concluded that Mr. Resnick failed to make a successful showing on both *Strickland* prongs. On the performance prong, the district court noted that Mr. Resnick's trial counsel provided an affidavit outlining his strategy of avoiding emphasis on the Government's expert witnesses and instead attacking A.M.'s credibility. On the prejudice prong, the court concluded that even if counsel rebutted the expert testimony, all the jury would have learned is that not all experts agree on the relationship between child pornography possession and contact offenses.

Mr. Resnick renews his contentions here. Our view of the issue is the same as the district court's. Defense counsel provided an affidavit stating that his strategy was to allow the Government to overplay its hand with expert testimony, then ask the jury to "use common sense and logic and see

that such overkill looked ridiculous."[8] The record demonstrates that Mr. Resnick's trial counsel followed through on that strategy. During closing arguments, he suggested to the jury that the Government's reliance on experts was a "smoke and mirrors" trick to make up for the weakness of A.M.'s credibility.[9] To be sure, Mr. Resnick's trial counsel could have selected a different strategy. But that is not the issue. Instead, Mr. Resnick must "present evidence to overcome the strong presumption that his attorney was engaged in reasonable trial strategy." *United States v. Memar*, 906 F.3d 652, 659 (7th Cir. 2018). He has failed to do so. As the district court noted, dueling experts on the correlation between child pornography possession and contact offenses was highly unlikely to sway the verdict, given that there was substantial evidence that directly showed Mr. Resnick sexually abused A.M. and K.M.

**2.**

Mr. Resnick's second contention relates to his counsel's failure to counter the Government's computer forensics expert with a rebuttal expert. Ahead of the trial, the Government informed Mr. Resnick that it would call as an expert witness Detective Brian Broughton, who examined Mr. Resnick's computer after his Florida arrest. The Government's notice stated that Detective Broughton would testify as a computer expert and explain his search of Mr. Resnick's computer, how peer-to-peer file sharing works, how child

---

[8] R.184-1 ¶ 30.

[9] Trial Tr.IV at 46.

pornography offenders obtain child pornography, and how files are stored on computers. Shortly after the deadline to notice witnesses had passed, Mr. Resnick's trial counsel sought leave to add a defense computer expert. The district court denied that late-arriving request.

Mr. Resnick contends that his counsel was ineffective for failing to call a rebuttal expert to counter Detective Broughton's testimony. He submits that failing to call a rebuttal expert witness prevented counsel from effectively disputing the Government's claim that Mr. Resnick purposefully deleted child pornography from his computer. The Government, on the other hand, notes that there is no general requirement that defense counsel call a rebuttal expert for every expert that the Government calls. Moreover, the Government observes that Mr. Resnick's counsel effectively cross-examined Detective Broughton, eliciting several important concessions.

To begin, Mr. Resnick's claim fails because he has not identified an "expert capable of supporting the defense [who] was reasonably available at the time of trial." *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010). But even setting this failure aside, there was no deficient performance. As the district court observed: "counsel's cross-examination of Detective Broughton was strong and highlighted the points Resnick now argues an expert could have made."[10] Indeed, counsel elicited important concessions from Detective Broughton, including that he had not found child pornography on the computer from the relevant time period, that he

---

[10] R.198 at 25.

could not say whether Mr. Resnick searched for child pornography, and that he could not determine whether Mr. Resnick had deleted files from certain parts of his hard drive. It is difficult to see what a defense expert would have added, and calls to mind the Supreme Court's observation that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). Moreover, Mr. Resnick cannot show prejudice. Any expert testimony on Mr. Resnick's behalf would have been considerably undermined by his own plea agreement from the Florida proceedings, in which he admitted he deleted child pornography from the computer.

### 3.

Mr. Resnick also contends that trial counsel was ineffective for failing to introduce impeachment evidence about alleged prior sexual conduct by A.M. During the motion in limine process, defense counsel sought permission to introduce evidence of A.M.'s past sexual contact with K.M. In particular, counsel argued for the admission of an incident between A.M. and K.M. that K.M.'s mother encountered. When questioned by K.M.'s mother, the boys disclosed Mr. Resnick's abuse. The court denied the motion.

Mr. Resnick's contention fails for several reasons. As a threshold matter, counsel *did* seek to admit the supposed impeachment evidence. It was the court that denied the motion in limine. Moreover, the impeachment evidence that Mr. Resnick says his counsel should have introduced was

clearly barred by Federal Rule of Evidence 412, and any argument to the contrary was meritless.[11] As we have held, counsel does not need to raise meritless arguments. *See Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). Mr. Resnick contends that counsel should have argued that A.M. had a history of making false accusations and therefore an exception to Rule 412 would be appropriate. But he has offered no evidence at all that A.M. had such a history. We therefore cannot say that counsel's performance was unreasonable.

**4.**

Mr. Resnick next contends that his trial counsel was ineffective for failing to object when the Government introduced evidence that he had refused to take a polygraph. The admission of the polygraph refusal was central to Mr. Resnick's direct appeal. *See Resnick*, 823 F.3d at 896. Because counsel had not objected, we reviewed for plain error and found no basis to reverse. In doing so, we noted that the admissibility of a defendant's refusal to take a polygraph was an unsettled area of law. *See id.* at 897 ("The law is not settled, and the case against Resnick was airtight."). Mr. Resnick submits that, had defense counsel timely objected to the polygraph refusal being presented to the jury, the trial court would have sustained the objection or we would have overturned the conviction on appeal (in other words, without the plain error standard, we would have reversed).

---

[11] In relevant part, Federal Rule of Evidence 412 makes inadmissible "evidence offered to prove that a victim engaged in other sexual behavior."

We cannot accept this argument. First, our case law provides that failure to object to an issue that is not settled law within the circuit is not unreasonable by defense counsel. *See, e.g.*, *Tucker v. United States*, 889 F.3d 881, 885 (7th Cir. 2018) ("[W]e have held that a failure to anticipate a change or advancement in the law does not qualify as ineffective assistance."). As we explained in Mr. Resnick's direct appeal, the law surrounding the admission of his refusal to take a polygraph was far from clearly established at the time of his trial. *See Resnick*, 823 F.3d at 897–98. We therefore cannot say that trial counsel's performance fell below an objective standard of reasonableness.

As for Mr. Resnick's contention regarding the standard of review that applied in his direct appeal, we have noted that plain error is comparable to (in fact, less demanding than) *Strickland* prejudice. *See Swanson v. United States*, 692 F.3d 708, 717 (7th Cir. 2012) ("[T]he standard for plain error review and ineffective-assistance-of-counsel are comparable, and in some respects, plain error review may be less demanding."). Mr. Resnick's failure to overcome plain error review of the polygraph issue in his direct appeal signals that he cannot establish prejudice in his postconviction review. And, at the risk of repetition, we note again that the Government's case was "airtight." *See Resnick*, 823 F.3d at 897.

### 5.

Mr. Resnick's next contention is that his counsel was ineffective for failing to object to A.M.'s testimony about the effect that Mr. Resnick's assaults had on him. This testimony included that he had night terrors after the assaults and that he had trouble talking about his abuse. Mr. Resnick submits

that the testimony was unduly prejudicial, and his counsel should have sought to exclude it from the trial. The Government responds that such testimony is common to explain why the victim did not immediately report the assault. Therefore, the Government submits, counsel was not ineffective for failing to exclude plainly admissible evidence.

The Government has the better argument. A.M.'s testimony was highly probative. At trial, a key argument from Mr. Resnick was that A.M. lied about the assault because there was a significant delay between when the crime occurred and when A.M. reported it. By testifying about the trauma that he suffered and his inability to speak about the assault for some time, A.M. offered probative evidence. *See* Fed. R. Evid. 401. Mr. Resnick has provided nothing to suggest that the risk of unfair prejudice substantially outweighed the probity. *See* Fed. R. Evid. 403. Because the testimony was admissible, counsel was not ineffective for failing to object.

**6.**

Mr. Resnick submits that his counsel was ineffective for failing to object when the Government introduced evidence that his employer had a policy prohibiting passengers in its drivers' trucks, a policy which he violated by inviting A.M. on the trip. He contends that Rule 404(b) bars admission of the "no passenger policy" because it demonstrates a propensity for breaking rules. His counsel's failure to object, Mr. Resnick contends, prejudiced him. The Government contends that the "no passenger policy" evidence was largely inconsequential, and surely outweighed by the other evidence in the case.

In denying Mr. Resnick's § 2255 motion, the district court wrote that the "no passenger policy" "evidence was of minor significance. Its admission does not undermine confidence in the overall outcome of his trial."[12] We believe that the district court's estimation of the impact of this evidence is correct. We are confident that the jury's attention was captured not by evidence of Mr. Resnick's violating a corporate policy, but rather by the evidence of his violent sexual abuse of two young children.

**7.**

Mr. Resnick takes issue with his counsel's failure to object to the admission of his conduct around children on an occasion unrelated to this case. During the trial, the Government introduced evidence that Mr. Resnick, while on a camping trip with friends (unrelated to A.M. and K.M.), once offered to drive three children home from the campsite. Mr. Resnick contends that his counsel should have made a relevance objection because the evidence did not suggest any improper conduct. The Government responds that regardless of the relevancy, Mr. Resnick cannot show that but for the admission of the evidence there is a reasonable probability of a different outcome.

The Government is certainly correct. The testimony about offering to drive the other children was hardly central to the case. Because there is overwhelming direct evidence of Mr. Resnick's criminal activity, the campsite driving offer has no impact on confidence in the outcome of this case.

---

[12] R.198 at 38.

**8.**

Mr. Resnick also submits that his counsel was ineffective for not objecting when the Government introduced the factual basis for his Florida plea to child pornography charges. He contends that counsel was obligated to object to the admission of the Florida plea factual basis as unfairly prejudicial under Federal Rule of Evidence 403.

This argument clearly fails. Mr. Resnick's Florida conviction was under 18 U.S.C. § 2251, which is in Chapter 110 of Title 18. Rule 414 of the Federal Rules of Evidence provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Under that rule, "child molestation" includes any offense in Chapter 110 of Title 18, thus Mr. Resnick's Florida conviction fell within the rule's scope. *See* Fed. R. Evid. 414(d)(2)(B). And because the computer involved in the Florida prosecution was the same one that A.M. alleged Mr. Resnick used to show him child pornography, the factual basis of the Florida plea was extremely probative, and the probity was not substantially outweighed by the risk of unfair prejudice. Accordingly, it was admissible, and counsel was not ineffective for failing to object to admissible evidence.

**9.**

Mr. Resnick's next contention also involves evidence uncovered on his computer in Florida. During the trial the Government presented evidence that Mr. Resnick's computer contained written stories describing child molestation. The Government did not reference any specific story, nor

were the stories themselves admitted. Mr. Resnick now claims that his counsel was ineffective for failing to object to the Government's reference to the written stories being found on his computer. He notes that possession of such written stories is legal, and that reference to them may have turned the jury against him. Mr. Resnick further contends that his counsel should have sought a limiting instruction about the stories but failed to do so.

Mr. Resnick is correct that possession of written stories like those referenced during his trial is legal. Still, that does not establish prejudice. Given that there was considerable direct evidence, including his Florida plea agreement, that Mr. Resnick possessed actual child pornography, the written-stories evidence was of minor consequence. As for the limiting instruction argument, we have held that "the decision not to request a limiting instruction is solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence." *See United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996). We see no basis to think that counsel's decision not to seek a limiting instruction was unreasonable.

**10.**

Mr. Resnick's final contention related to his trial is that even if none of the alleged errors by his counsel amounted to ineffective assistance individually, taken together the errors amount to a violation of his Sixth Amendment right. But when "we have detected no unreasonable errors in assistance, we cannot conclude that there was any cumulative effect from these errors that would have amounted to ineffective assistance of counsel as evaluated under the *Strickland* parameters." *Yu Tian Li v. United States*, 648 F.3d 524, 533

(7th Cir. 2011). That is the case here. Mr. Resnick has failed to identify errors that could combine to overcome the Government's strong case against him. In sum, Mr. Resnick's counsel did not provide ineffective assistance during the pretrial and trial proceedings.

## C.

With Mr. Resnick's trial claim resolved, we turn to his claim of ineffective assistance of counsel during his sentencing proceeding. Mr. Resnick focuses his claim on three decisions by his counsel during sentencing that, in his view, led the district court to impose a higher sentence than he otherwise would have received.

*Strickland*'s two-prong standard applies to challenges based on counsel's alleged ineffectiveness at sentencing. *See Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010). The performance prong applies the same way for sentencing performance as it does for trial performance: the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *See id.* at 843–44. For prejudice at sentencing, the "petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Id.* at 844.

### 1.

Mr. Resnick first focuses on the Government's argument that his child pornography collection should inform the sentencing court's assessment of his recidivism risk. In its sentencing memorandum, the Government contended that Mr. Resnick's possession of child pornography during the years after his sexual abuse of A.M. demonstrated his ongoing sexual interest in prepubescent minors. An offender's

collection of child pornography, according to the Government, is a key indicator of the offender's likelihood to commit a future contact offense. Moreover, the Government argued, Mr. Resnick's steps to act on his sexual interest in prepubescent minors by attempting to groom children and by continuing to download child pornography indicated that he is likely to reoffend if the opportunity arose. In response, Mr. Resnick's counsel attempted to argue that Mr. Resnick's psychological evaluation did not show results typically associated with pedophilia. Thus, defense counsel submitted, the Government's evidence about the typical recidivism of pedophiles was inapplicable to Mr. Resnick.

In his § 2255 motion, Mr. Resnick contends that the Government's sentencing memorandum relied implicitly on Special Agent Donaldson's testimony and on the Butner study, which described recidivism risks for different types of sex offenders. As we noted earlier, Mr. Resnick faults his counsel for not challenging Special Agent Donaldson's testimony at trial. He also submits that his counsel should have consulted with or presented an expert who could have rebutted specific aspects of the Government's recidivism argument.

When the district court examined Mr. Resnick's arguments, it concluded that defense counsel was not deficient, nor did Mr. Resnick suffer any prejudice. In one part of its analysis, the district court wrote that "[Mr.] Resnick's continued sexual interest in minor children was only a part of

the constellation of evidence and argument that this court considered when crafting [Mr.] Resnick's sentence."[13]

Mr. Resnick renews his contentions here. He adds an additional argument: that in analyzing the prejudice prong, the district court impermissibly applied its subjective view that it would not have imposed a different sentence, rather than an objective view as required under the case law. The Government responds that the district court's reference to the factors it considered simply shows that there were abundant bases for the sentence, not that the district court impermissibly applied a subjective standard.

We conclude that the district court applied the proper methodology and reached the correct result. Mr. Resnick's trial counsel *did* use an expert to rebut the Government's argument. As we discuss in the next section, defense counsel's sentencing memorandum cited Leo Meagher, an expert who evaluated Mr. Resnick. In doing so, defense counsel challenged the applicability of the Government's claimed connection between viewing child pornography and committing contact offenses. Moreover, we have approved of sentencing arguments in child sexual abuse cases that draw a connection between the specific form of child pornography found in a defendant's possession and that defendant's risk of committing contact offenses in the future. *See United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (observing that "[i]t's a mistake to lump together different types of sex offender," and that "[t]he sadistic nature of much of the child pornography consumed by the defendant is another reason

---

[13] *Id.* at 46.

to worry about his being on the loose"). For that reason, we cannot say that defense counsel was unreasonable in adopting a strategy that did not directly rebut the evidence that the Government relied on for its recidivism argument, but rather sought to show why that evidence was inapplicable to Mr. Resnick.

As for Mr. Resnick's contention that the district court applied the wrong standard to his § 2255 motion, we see no merit.[14] The district court did not apply a subjective standard when it noted that it considered many pieces of evidence when imposing Mr. Resnick's life sentence. We have held that district courts deciding a § 2255 motion must apply an objective standard, not a subjective standard of whether that particular judge would have sentenced differently absent counsel's error. *See Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012). Here, during its prejudice inquiry, the court's reference to the evidence it considered simply indicates that there was abundant evidence to support Mr. Resnick's sentence. That is an objective application of the prejudice prong. Thus, Mr. Resnick cannot show deficient performance or prejudice.

**2.**

Mr. Resnick's next contention involves defense counsel's use of the psychological evaluation report written by Leo

---

[14] Our conclusion that counsel's performance was not deficient could remove our need to discuss this contention. For the sake of completeness, we think it is appropriate to explain why the district court applied the proper methodology when examining prejudice.

Meagher.[15] The Meagher report contained several observations unhelpful to Mr. Resnick. For instance, Meagher noted that Mr. Resnick "is an extremely dominant individual," that "[h]e often blatantly ignores social rules and conventions," that he showed severe antisocial traits, and that he is an "aggressive individual who acts out impulsively."[16] At the same time, Meagher observed that "Mr. Resnick did not test with characteristics typically seen in sex offenders and there were no behaviors typical of child molesters indicated in the testing."[17] In its sentencing presentation, the Government relied on aspects of the Meagher report.

Mr. Resnick contends that counsel was ineffective for submitting an expert report that was harmful to his mitigation defense. He claims that given other evidence, such as letters of support, it would have been better to leave the potentially harmful Meagher report out.

We cannot agree with Mr. Resnick's assessment. The Meagher report directly challenged a key Government argument: that Mr. Resnick is a pedophile. There is no doubt that, from Mr. Resnick's perspective, the Meagher report contained harmful information alongside helpful information. But defense counsel was not objectively unreasonable for concluding that the good outweighed the bad. We

---

[15] Meagher's letterhead on the report indicates that he has a master's degree and is a licensed clinical professional counselor, certified criminal justice specialist, and board-certified hypnotherapist. R.143-3 at 1.

[16] *Id.* at 6, 8.

[17] *Id.* at 1.

therefore cannot say that defense counsel's decision to use the report fell below an objective standard of reasonableness.

**3.**

Mr. Resnick's final contention faults his attorney for not presenting data about sentences for offenders convicted of purportedly similar offenses. This argument lacks merit.

At the sentencing hearing, defense counsel argued for a substantially below-Guidelines sentence of 360 months' imprisonment. Now, Mr. Resnick submits that defense counsel was ineffective for failing to present Sentencing Commission data showing the mean and median sentences of offenders sentenced under U.S.S.G. § 2A3.1 with a criminal history category of VI, but who were not career offenders—in other words, offenders who Mr. Resnick contends are similarly situated to him. That data, Mr. Resnick says, would have showed a mean sentence of 276 months' imprisonment and a median of 257 months' imprisonment—far less than the life sentence that the court imposed and the 360-month sentence that counsel advocated for at the hearing.

Mr. Resnick's contention has no merit. Mr. Resnick faced a mandatory minimum 360-month sentence on Count I. On top of that, he faced a mandatory consecutive 84-month sentence for his conviction on Count III. That is to say, Mr. Resnick faced a combined 444-month mandatory sentence. It was not objectively unreasonable, therefore, for counsel to decide against presenting data to show that offenders with Mr. Resnick's criminal history category received an average sentence of 276 months' imprisonment and a median sentence of 257 months. Such sentences, or even anything close to them, simply were not a possibility for Mr. Resnick.

Moreover, Mr. Resnick's presentence report provided an offense level of 43, which corresponds to life in prison (Mr. Resnick's real offense level was 53, but that exceeded the maximum level provided under the Guidelines of 43). Counsel cannot be ineffective for declining to make such an inapt sentencing argument.

## Conclusion

Mr. Resnick has failed to establish that his trial counsel's performance during the plea process, trial, and sentencing violated his Sixth Amendment right to effective assistance of counsel. We, therefore, affirm the district court's decision denying his motion to vacate under 28 U.S.C. § 2255.

AFFIRMED